FREDERICKS HOMBERG WICKER, Judge.
IsThese consolidated appeals arise out of plaintiffs purchase of commercial property subject to a pre-existing lease between defendant-lessee and a third party seller.
First, plaintiff, Jefferson Parish Hospital District No. 1 d/b/a West Jefferson Medical Center (West Jeff), appeals the trial court’s granting of summary judgment in favor of defendants, K & B Louisiana Corporation d/b/a Rite Aid and Rite Aid Headquarters Corporation (hereinafter collectively referred to as “Rite Aid”). In that judgment, the trial court determined that La. Const, art. VII, § 14(A), which prohibits the donation of public funds, does not apply or have effect to nullify the lease at issue under the facts of this case. For the following reasons, we agree.
|4Second, Rite Aid appeals the trial court’s judgment denying its motion to tax costs. Following the trial court’s granting of summary judgment, Rite Aid, as the prevailing party, filed a motion to tax costs pursuant to La. C.C.P. art. 1920. After considering West Jeffs position that, as a state entity, it is immune from the payment of a prevailing party’s court costs, the trial court denied Rite Aid’s motion. Rite Aid appeals that judgment and, for the following reasons, we find that West Jeff, as an unsuccessful plaintiff, is not immune from the payment of court costs and that the trial judge could, in his discretion, tax costs against West Jeff. For the following reasons, we reverse the judgment of the trial court on this issue and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts in this case are not in dispute. In 2003, West Jeff purchased a piece of commercial property, adjacent to West Jefferson General Hospital, at 4535 Westbank Expressway in Marrero for $3,730,000.00. The property is a large shopping center facing the Westbank Expressway; a portion of the shopping center contains a Rite Aid store. At the time of the 2003 purchase, a 1976 lease remained in effect between the property owner, Marrero Shopping Center, Inc. (MSC), and Rite Aid. The lease set the property rent at $3.35 per square foot of the leased property in addition to a certain percentage of net sales for that store location. The lease included renewal options, providing Rite Aid the option to extend the lease through 2032.[1]
In 2012, West Jeff filed suit against Rite Aid seeking to nullify the lease at issue. West Jeff filed a motion for summary judgment, asserting that the 1976[filease at issue is an absolute nullity because the rent is so far below fair market value that the lack of sufficient consideration renders the lease a donation of public funds in violation of La. Const. art. VII, § 14(A). Rite Aid filed a cross-motion for summary judgment, asserting that the lease, executed between two private parties, is valid and is not an unlawful donation of public funds. After a hearing, the trial court denied West Jeffs motion for summary *53 judgment and granted Rite Aid’s cross-motion for summary judgment, finding that La. Const. art. VII, § 14(A) does not apply under the facts of this case. We agree.
In support of its motion for summary judgment, Rite Aid introduced into evidence the June 2, 2003 Act of Cash Sale that reflects that West Jeff purchased the property at issue from Marrero Shopping Center, Inc. for the amount of $3,730,000.00. The act of sale clearly states that the purchase of the property is “subject to” the “current leases[,]” including the “[l]ease by and between Marrero Shopping Center, Inc. and K & B Louisiana Corporation by merger of Katz & Besthoff # 23 into K & B Louisiana Corporation and now d/b/a Rite Aid, original lease made January 23, 1976.” The act of sale further provides that West Jeff “assumes ... all obligations and liabilities of the lessor under the Current Leases....”[2]
In further support of its motion for summary judgment, Rite Aid produced documentation to show that West Jeff considered the existing Rite Aid lease prior to purchasing the property. The record reflects that on September 30, 2002, Lewis J. Derbes, a certified real estate appraiser, forwarded correspondence to the Senior Vice-President of West Jeff concerning his appraisal of the subject property. In that correspondence, Mr. Derbes stated that he analyzed the property to determine Rthe fair market value of the property, which he assessed as $4,300,000.00. In his appraisal, Mr. Derbes considered the leases encumbering the property and specifically stated that “two of the leases are long term in nature and considered to be well below market rental rates (i.e. Rite Aid Drugs space and Westbank Ambulatory Care space)....” The appraisal further stated that “due to below market rents in two long term leases, there appears to be significant Leasehold Interests in the Rite Aid space and the Westbank Ambulatory space.”[3]
Additional documentation produced in support of Rite Aid’s motion for summary judgment reflects that the parish administration also analyzed the anticipated property purchase. An October 7, 2002 memorandum issued by the parish administration states that the purchase of the property at issue provided a substantially higher investment return compared to the administration’s other investments. The memorandum issued by the administration further stated:
We have also identified several other opportunities that would benefit the Medical Center, if and when, any of the existing tenants wish not to renew their leases. Among these are a storage facility for Medical Records — we currently pay a third party $250,000 annually to provide this service. Because of the visibility of the shopping center and the availability of parking, this location is also ideal for a wide range of outpatient services.
Based on the above analysis, it is our recommendation that the Medical Center proceed with the purchase of the Marrero Shopping Center. While providing an excellent return on investment in the short-term, it will also provide flexibility in developing the Medical Center Campus for the long term.
*54 Rite Aid also attached several of West Jeffs Board of Directors’ meeting minutes. The minutes reflect that, on January 28, 2002, the Board of Directors recommended making an offer to acquire the property at issue. Further, the October 28, 2002 meeting minutes reflect that “[c]urrent leases were discussed-’^Finally, the February 24, 2003 minutes reflect that a resolution, authorizing the purchase of the property at issue for $3,730,000.00, was presented; the resolution specified that the purchase was “subject to the leases encumbering said property.”

DISCUSSION

Summary Judgment

The law is well-settled that an appellate court reviews the granting of a motion for summary judgment de novo, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765. A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
This Court has stated:
Summary judgment procedure is intended to make a just and speedy determination of every action. La. C.C.P. art. 966. It is favored and the procedure shall be construed to achieve this intention. Id. Under La. C.C.P. art. 966, the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted.
Sharpless v. Louisiana Dep’t of Transp., 12-457 (La.App. 5 Cir. 2/21/13), 110 So.3d 1117, 1119-20.
In opposition to Rite Aid’s cross-motion for summary judgment, West Jeff argued that the lease at issue is in violation of La. Const, art. VII, § 14(A) because |sWest Jeff, as a public entity, cannot lease publicly owned property below fair market value. La. Const. art. VII, § 14(A) provides:
Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Except as otherwise provided in this Section, neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
We find the trial court correctly determined that La. Const, art. VII, § 14(A) does not apply to nullify the lease at issue under the facts of this case— where the property purchase was made subject to the pre-existing lease between two private parties, Rite Aid and MSC. In this case, West Jeff conducted a full appraisal analysis to determine if the property purchase, including the terms of the existing leases encumbering the property, was in its best interest.[4] Therefore, we *55 find the trial court did not err in its granting of summary judgment in favor of Rite Aid. All costs of this appeal are taxed against plaintiff-appellant, West Jeff.

Motion to Tax Costs

After the trial court granted Rite Aid’s cross-motion for summary judgment, dismissing West Jeffs petition in this case, Rite Aid filed a motion to tax costs. Rite Aid, as the prevailing party, requested that the trial judge order West Jeff to pay Rite Aid’s recoverable costs under La. C.C.P. art. 1920. In opposition to the motion, West Jeff asserted that, as a political subdivision of the state, it is immune from the payment of court costs. West Jeff argued that political subdivisions of the state are immune from payment of court costs even in proceedings where the political subdivision is a plaintiff who is unsuccessful in suit. After considering West Jeffs argument concerning immunity, the trial judge denied Rite Aid’s Emotion to tax costs. For the following reasons, we find that West Jeff is not immune from the payment of court costs.
The Louisiana Constitution of 1974 provides that “[njeither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.” La. Const. art. 12, § 10(A). Further, the Louisiana Supreme Court, in Segura v. Louisiana Architects Selection Board, 362 So.2d 498, 499 (La.1978), held that court costs are part of the “liability” to which a party is cast in litigation. In 1995, the Louisiana Constitution was amended to provide that the “legislature by law may limit or provide for the extent of liability of the state, a state agency, or a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages.” La. Const. art. 12, § 10(C). This Court, in State, Dep’t of Transp. & Dev. v. Lauricella Land Co., L.L.C., conducted a thorough analysis of the state’s and its political subdivisions’ immunity and determined that neither the state nor any of its political subdivisions are immune from the payment of its own court costs. 12-384 (La.App. 5 Cir. 12/11/12), 106 So.3d 1124, writ denied, 13-0094 (La.3/1/13), 108 So.3d 1174. In Lauricella Land, supra, this Court conducted the following analysis:
Prior to its amendment in 1992, LSA-R.S. 13:4521(A) provided:
Except as provided in R.S. 13:5112, R.S. 19:12.1, R.S. 19:113.1, and R.S. 48:451.3, and as hereinafter provided, neither the state nor any parish, municipality, or other political subdivision, public board, or commission shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state or any such parish, municipality, or other political subdivision, board, or commission, in any court of this state or any municipality of this state, including particularly, but not exclusively, those courts in the parish of Orleans and the city of New Orleans. This Section shall have no application to stenographers’ costs for taking testimony.
The plain language of this 1991 version of LSA-R.S. 13:4521(A) granted the state, its agencies, and political subdivisions of the state l1flimmunity from all court costs (with the exceptions provided for in the referenced statutes of 13:5112, 19:12.1, 19:113.1 and 48:451.3). In finding that the state, its agencies, and political subdivisions of the state could be liable for court costs, the Segura court reasoned that the Louisiana Constitution of 1974 superseded the immunity afforded the state, its agencies, and political *56 subdivisions of the state by statute. In June of 1992, the Louisiana legislature amended LSA-R.S. 13:4521(A) to add: “Costs which are temporarily deferred pursuant to this Section cannot be shifted to opposing parties during the pendency of such deferment.” In LIGA v. Gegenheimer, 93-3021 (La.4/21/94), 636 So.2d 209, the Supreme Court analyzed and interpreted this amendment to LSA-R.S. 13:4521(A). In LIGA the Supreme Court stated that the “state, state agencies, and political subdivisions are no longer immune from payment of court costs.” The Court found that, after its decision in Segura, LSA-R.S. 13:4521(A) was amended to provide that “court costs due from the state and state agencies are ‘temporarily deferred.’ ” Again, in 1995, in its decision in Prejean v. Dixie Lloyds Ins. Co., 94-2979 (La.5/22/95), 655 So.2d 303, 307, modified on other grounds on reh’g, 94-2979 (La.9/15/95), 660 So.2d 836, the Supreme Court reiterated that “the state and state agencies are ‘exempt from the prepayment of court costs’ or have been given a ‘temporary deferment’ from the payment of court costs until a final judgment is rendered.” (Emphasis in original.).
106 So.3d at 1128-30.
Although the narrow issue presented to this Court in Lauricella Land concerned a political subdivision’s own costs, this Court determined that neither the state nor its political subdivisions is immune from court costs unless such immunity is statutorily provided. The narrow issue presented in this case is whether a political subdivision of the state can be responsible for an opposing party’s costs pursuant to La. C.C.P. art. 1920 in a suit in which a political subdivision is an unsuccessful plaintiff. There is no statutory immunity specifically provided to the state or its political subdivisions limiting any liability for court costs of an opposing prevailing party under La. C.C.P. art. 1920.
La. C.C.P. art. 1920 provides that, “[ejxeept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.” While it is the general rule that the party cast in 1 ^judgment should be taxed with costs, the trial court may assess costs in any equitable manner and against any party in any proportion it deems equitable. Carcamo v. Raw Bar, Inc., 12-294 (La.App. 5 Cir. 11/27/12), 105 So.3d 936, 939. The trial court has great discretion in awarding costs. Id.
We find that the trial judge improperly determined that he could not, in his discretion, tax costs against West Jeff as a political subdivision of the state. Accordingly, because the trial judge rendered his judgment based upon an error of law, we remand this matter for a subsequent hearing on Rite Aid’s motion.[5]

SUMMARY JUDGMENT AFFIRMED; JUDGMENT ON MOTION TO TAX COSTS REVERSED; REMANDED.

. The parties previously entered into a 1960 lease (the Old Lease), which expired on April 30, 1976. The parties entered into a new agreement in 1976, after the expiration of the Old Lease, because the parties contemplated that the leased premises would be remodeled and expanded, pursuant to plans and specifications mutually agreed upon by the parties. The parties later executed a "Lease Amendment” on June 12, 1992, wherein the rent was increased and the lessee agreed to pay a one-time payment of $25,000.00 to MSC. The amended lease set the rent at $3.35 per square foot in addition to a percentage of net sales in excess of $2,022,040.00. The amendment further granted the lessee nine (9) optional five-year renewal periods, providing the right to extend the lease through 2032.

. The parties introduced the deposition testimony of Michael Adock, the corporate representative of West Jeff. Mr. Adock did not dispute the recorded act of sale, which re-fleets that the 2003 purchase was subject to the Lease at issue.

. Mr. Derbes estimated the value of the Leasehold Interests to be $700,000.00.

. The record further reflects that West Jeff considered expropriation of the purchased property but made the determination that a *55 purchase of the property was in West Jeff's best financial interest.

. Upon review of the transcript in this matter, we find that neither party introduced into evidence any documentation attached to their pleadings in support of or opposition to the motion to tax costs. The Louisiana Supreme Court has instructed that "[e]vidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record.” Denoux v. Vessel Mgmt. Services, Inc., 07-2143 (La.5/21/08), 983 So.2d 84, 88-89.