J^PETTIGREW, J.
Eagle Pacific Insurance Company (Eagle) appeals a judgment whereby the trial court held a liquidated subsidiary corporation liable for unpaid insurance premiums but failed to cast the corporate liquidator or the shareholders of its liquidated parent corporation in judgment for the debt. Based on the unique facts and circumstances herein, and finding no manifest error in the trial court’s judgment, we affirm.
FACTS AND PROCEDURAL HISTORY
According to the record, Eagle provided workers’ compensation insurance to two related companies, Buzzy P, Inc.[1] (Buzzy P) and Kelley Consulting Incorporated (KCI). Buzzy P was a wholly owned subsidiary of KCI. William Kelley was the owner of 100 percent of the outstanding shares of KCI. His wife, Pamela Kelley, held a community property interest in the KCI stock.
Eagle first issued a “Workers Compensation And Employers Liability Insurance Policy” to Buzzy P and KCI for the policy period October 1, 1995 to October 1, 1996. The policy was automatically renewed in October 1996 for another year. The policy contained a compensating balance plan endorsement whereby the insureds shared in the risk that payments might have to be made to claimants. Under the policy, premium adjustments were to occur on a monthly basis beginning seven months after the policy inception date and continuing on a monthly basis until eighteen months after the policy inception date. After the eighteenth month from the policy inception date, the premium adjustments were to occur on an annual basis for a period of four years. In order to keep its insureds apprised of all claim activity, Eagle provided monthly “loss-run” reports that set forth the amount paid and all other pertinent information for each claimant on the policy.
The premium at issue in this case arose from an employee claim made by Joel Per-lander against Buzzy P. According to the record, Perlander was injured in July 1997 and settled his claim approximately one year later for $150,000.00. Notwithstanding this settlement in August 1998, the Perlander claim was erroneously coded to another company 13and thus, omitted from Buzzy P’s monthly loss-run reports. Per-lander’s settlement resulted in an additional premium due and owing to Eagle in the amount of $139,433.00. However, Eagle did not bill Buzzy P for this additional premium until April 1999.
In July 1998, liquidation proceedings commenced to voluntarily dissolve Buzzy P *20 and KCI without court proceedings. Mr. Kelley was appointed liquidator for both corporations. In connection with the liquidation proceedings, Mr. Kelley placed advertisements in two newspapers notifying the public of the pending liquidation. In August 1998, the Louisiana Secretary of State authorized the dissolution and liquidation of both Buzzy P and KCI. Thereafter, on August 28, 1998, Mr. Kelley, as liquidator, transferred the assets of Buzzy P to KCI in exchange for the surrender and cancellation of all outstanding shares of stock. He then transferred the assets of KCI to himself as the sole shareholder of KCI in exchange for the surrender and cancellation of all outstanding shares of KCI stock.
According to Mr. Kelley, at the time of the dissolution of his two companies, he did not consider Eagle to be a potential creditor. Although Perlander was injured in July 1997, Eagle had inadvertently been attributing this claim to another, unrelated company. It was not until mid 1998 that Eagle discovered this error concerning the Perlander claim. Nonetheless, monthly loss-run reports from Eagle to Buzzy P between July 1998 and April 1999 continued to omit any reference to the Perlander claim or the possibility that any additional premiums would be due. In fact, during a December 1998 meeting with Mr. Kelley, representatives from Eagle not only failed to advise Mr. Kelley of the Perlander claim, but indicated to Mr. Kelley that based on their rough calculations, he would be due a significant refund because of a successful subrogation claim by Eagle. Mr. Kelley later received a refund check from Eagle dated April 1, 1999 for $167,515.00.
Shortly thereafter, in a “Credit Memo” dated April 19, 1999, Eagle purportedly tried to notify Mr. Kelley, through his insurance agent, the Rosenthal Agency, that he owed Eagle $139,433.00 in unpaid premiums. According to testimony from Eagle’s representative, the Perlander claim was the reason for the premium adjustment. This came as a complete surprise to Mr. Kelley and the Rosenthal Agency.
Mr. Kelley refused to pay the additional premiums, asserting that the companies were legally liquidated and that he did not owe the money, as either liquidator or shareholder in |4possession of the corporate assets. Eagle then filed the instant suit against Production Systems, Inc., Buz-zy P, KCI, Mr. Kelley, as liquidator and shareholder, and Mrs. Kelley. Eagle argued that Mr. and Mrs. Kelley had breached a fiduciary duty owed to Buzzy P and its creditors. Eagle further claimed that Mr. and Mrs. Kelley had received an unlawful distribution of assets from Buzzy P and KCI thereby causing the companies to become insolvent and unable to pay the outstanding premiums owed to Eagle. Thus, Eagle maintained, the named defendants were liable to it for $139,433.00 plus interest, attorney fees, and costs.
The matter proceeded to a bench trial on June 11, 2002, at which time the court heard from various witnesses and accepted documentary evidence into the record. The court rendered judgment the following day, providing extensive oral reasons for same. The court found that the premium balance of $139,433.00 was correctly calculated by Eagle and was attributable to the settlement of the Perlander claim. The court concluded that Buzzy P was, in fact, liable to Eagle for $139,433.00, plus judicial interest and all costs not previously assessed. However, with regard to Eagle’s claims against Mr. and Mrs. Kelley, Production Systems, Inc., and KCI, the court dismissed these claims with prejudice, finding that Mr. Kelley had strictly complied with the liquidation statutes, thus *21 protecting him, as well as the other remaining defendants, from any personal liability for the debt owed to Eagle.
It is from this judgment that Eagle has appealed, assigning the following specifications of error:
1. The trial court erred in finding that Mr. [Kelley], as liquidator of both [KCI] and PSI/Buzzy P, did everything he was supposed to do under La. R.S. 12:145 and further erred in concluding that Mr. [Kelley], as liquidator of both entities, was not liable to Eagle Pacific.
2. The trial court erred in finding that the distributions to [KCI] and then from [KCI] to Mr. and Ms. [Kelley] were lawful because the distributions left PSI/Buzzy P and [KCI] unable to pay their lawfully owed obligations to Eagle Pacific.
LIQUIDATOR LIABILITY
In its first assignment of error, Eagle asserts the trial court erred in not holding Mr. Kelley liable as liquidator of both Buz-zy P and KCI. In support of its argument, Eagle cites to La. R.S. 12:147(B) and contends Mr. Kelley, as liquidator, is personally liable for failing to provide Eagle with notice of the liquidation of Buzzy P.
| sIt is well settled in Louisiana law that a liquidator bears a fiduciary duty not only to the corporation being liquidated, but also to its shareholders and creditors. Edwins v. Lilly, 422 So.2d 1217, 1222 (La.App. 1 Cir.1982), writs denied, 426 So.2d 178, 180 (La.1983). Specifically, “[i]n the performance of his duties, each liquidator shall be bound to exercise that care and prudence in the listing, custody, possession, control and disposition of the property and moneys of the corporation coming into his hands, and in the proper accounting therefor, and distribution thereof, as by law is imposed upon fiduciaries.” La. R.S. 12:145(G). The law governing dissolution of corporations, and the liquidator’s duties in that respect, is designated to protect the rights of the corporation, its shareholders, and its creditors. Frederick v. LeBlanc, 551 So.2d 801, 803 (La.App. 3 Cir.1989), writ denied, 556 So.2d 59 (La.1990).
Under La. R.S. 12:147(B), a liquidator has a fiduciary duty to notify certain persons of a pending corporate dissolution, and the failure to do so may result in personal liability for the liquidator for any judgment against the corporation. Id. The statute provides as follows:
B. After the proceeding for dissolution has taken effect, notice thereof shall be (1) given by registered or certified mail to all known creditors of, to all persons believed to have valid and subsisting claims (excluding prescribed and time-barred claims) against, and to all persons having unfulfilled contracts with, the corporation, and (2) published once a week for two successive weeks in a newspaper of general circulation in the parish in which the corporation’s registered office is located. Such notice shall call on the addressees to present their claims in writing and in detail, at a specified place and by a specified date, not less than six months after the notice was mailed. The giving and publication of such notice shall not be deemed an acknowledgement of the validity of any claim against the corporation, waiver of any defense or set-off to any such claim, interruption of prescription on, or tolling of any statute of limitation applicable to, any such claim, or revival of any claim which has been barred by any prescription, peremption or statute of limitations.
After considering the testimony of the witnesses and the documentary evidence, the trial court concluded that Mr. Kelley *22 satisfied his fiduciary duty as liquidator and, thus, was not personally liable for Buzzy P’s debt. In well-analyzed and thorough oral reasons for judgment, the court noted as follows:
The authorization to dissolve was issued by the Secretary of State August the 7th, 1998, and the corporation was placed in a voluntary liquidation and dissolution under Title 12, Section 145. Newspaper ads were run and proper corporate resolutions were adopted and, frankly, the Court feels that Buzzy P did everything it was suppose[d] to do under Title 12, Section 145, to properly carry out a voluntary liquidation of that corporation and the distribution of that corporation’s assets.
_k-' • •
[I]t is also quite apparent to the Court that as [of] August of 1998, when these liquidations occurred, that Mr. Kelley would not have had any reason to believe that he owed any more money to Eagle. All of the evidence would tend to indicate that because of the mistake made by Eagle and its, what appears to the Court to have been, its own confusion perhaps in December of 1998 about the status of the Joel Perlander claim, the Court believes that in August of 1998 Mr. Kelley reasonably believed that he did not or that Buzzy P, Incorporated, did not owe any money to the insurance company. And so he completed the liquidation, the dissolution, and distributed those assets.
[[Image here]]
It appears that notice by mail was not sent to the insurance company, and under the liquidation statutes apparently there is, there are two ways that creditors are notified. One is by mail and one is by general publication in newspapers. And it appears to the Court that Mr. Kelley, as liquidator of Kelley Consulting, Incorporated, and that Kelley Consulting, Incorporated, as the sole shareholder of Buzzy P, Incorporated, whose liquidator is also Mr. Kelley, did everything they were supposed to do under the statutes with regard to the liquidation and for a proper distribution of the assets.
[[Image here]]
However, in reviewing all of the statutes the Court has been unable to find any authority under which the shareholder of Buzzy P, Incorporated, that is Kelley Consulting, Incorporated, or the shareholder of Kelley Consulting, Incorporated, that is Mr. Kelley, or for that matter directors and liquidators, should be held liable under the circumstances of this case for the debt of Buzzy P, Incorporated. That is, by strictly complying with this liquidation statute, it seems to the Court that these other entities have effectively protected themselves from personal liability for a debt which ultimately this Court has found is owed by Buzzy P, Incorporated.
So based on all of those reasons, the Court will enter judgment in favor of Eagle against Buzzy P, Incorporated, only, for the principal amount sued upon, interest and court costs, but the Court will dismiss all claims against all other defendants in this case.
Following our review of the instant case, we conclude the record supports the trial court’s findings. It is clear from a reading of the trial court’s reasons for judgment that the court considered the comparative fault of Eagle in its decision to exonerate Mr. Kelley of any personal liability. See La. Civ.Code art. 2323. We agree that it was Eagle’s own negligence that caused Mr. Kelley to believe there were no outstanding premiums due to Eagle. Eagle should not now be rewarded *23 for what amounts to a situation created solely by its own fault.
In the December 1998 meeting with Eagle’s representatives, Mr. Kelley specifically requested that Eagle provide him with information regarding all outstanding claims under his policies. According to Mr. Kelley, there was no mention of the Perlander claim during this meeting. Rather, the discussion centered on a possible refund that may be due to Mr. Kelley |7because of a successful subrogation claim by Eagle. Mr. Kelley made a good faith effort to insure that there were no outstanding debts to Eagle. Eagle had a duty to provide Mr. Kelley with accurate information concerning his request. Eagle not only failed to include the Perlander claim on any loss-run reports in 1998, but also compounded the problem by subsequently mailing a refund check to Mr. Kelley in April 1999 for $176,515.00. Based on the facts and circumstances herein, Mr. Kelley was justified in believing that there would be no further claims by Eagle.
Pursuant to La. R.S. 12:147(B), Mr. Kelley, as liquidator of both Buzzy P and KCI, was required to (1) send notice of the pending corporate dissolution to all known creditors, to all persons believed to have valid and subsisting claims against the corporation, and to all persons having unfulfilled contracts with the corporation and (2) publish notice, once a week for two consecutive weeks, in the local newspaper. Mr. Kelley testified that at the time of the dissolution of his two companies, all outstanding bills had been paid, thus leaving no creditors to notify of the pending dissolution. Moreover, Mr. Kelley indicated he published the required notice of dissolution in two local newspapers.
As the trial court correctly noted, “by strictly complying” with the liquidation statutes, Mr. Kelley protected himself and the other remaining defendants from any personal liability for the debt owed to Eagle by Buzzy P. Mr. Kelley did everything that was required of him by law and fulfilled his obligation as liquidator of Buzzy P and KCI. This assignment of error is without merit.
SHAREHOLDER LIABILITY
In assignment of error number two, Eagle argues Mr. and Mrs. Kelley are liable to Eagle for receiving an unlawful distribution of assets that rendered the corporations insolvent. Citing La. R.S. 12:55(A), 12:145(F), and 12:93(D), Eagle contends Mr. and Mrs. Kelley violated the law by accepting corporate assets before all outstanding corporate debts and liabilities were satisfied. We disagree.
Pursuant to La. R.S. 12:145(F), a liquidator is prohibited from distributing net assets while there are corporate debts outstanding. That statute provides as follows:
F. (1) Any net assets remaining after paying or adequately providing for the payment of all debts and liabilities of the corporation, including all costs and expenses of the liquidation and any and all contingent liabilities of which the Isliquidator has knowledge, shall be paid by the liquidator to the shareholders according to their respective rights and preferences. The share of any shareholder who cannot be found shall be delivered to the administrator of the Uniform Unclaimed Property Act of 1997.
(2) In the event that there are contingent liabilities for which provision has been made as above, the liquidator shall not be dismissed until the contingent liabilities and debts have been paid or settled in full.
*24 Moreover, La. R.S. 12:55(A) prohibits a corporation from purchasing or redeeming its own shares when it is insolvent, or when the purchase or redemption would render it insolvent. With regard to shareholder liability, La. R.S. 12:93(D) specifically provides, in pertinent part, “Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him.” In order to prevail under La. R.S. 12:93(D), a plaintiff must establish that there was an unlawful distribution of assets and that the unlawful distribution was made to shareholders. AMP Service Corp. v. Richard, 419 So.2d 911, 914 (La.1982).
In the instant case, the trial court apparently found that Eagle failed to satisfy this burden of proof. The court offered the following analysis of the transactions leading to the dissolution of Buzzy P and KCI:
On August the 27th, 1998, Buzzy P Incorporated, through its liquidator Mr. Kelley, transferred all of its assets to its sole shareholder. And its sole shareholder of course was Kelley Consulting, Incorporated. Incidentally, subsequently] Kelley Consulting, Incorporated, transferred all its assets to Mr. Kelley. And I might add, at this point, that there appears to have been absolutely nothing improper, sinister, or otherwise incorrect or wrong about anything that either corporation did with regard to its dissolution, liquidation, and ultimate transfer of assets to Mr. Kelley as the sole shareholder of Kelley Consulting, which was then of course the sole shareholder of Buzzy P Incorporated. It’s quite proper and logical and expected that Mr. Kelley would end up with all of the net assets of those corporations. He assumed, expressly assumed certain debts that were owed by the company and apparently known to him.
[[Image here]]
[T]he original petition alleges that Mr. and Mrs. Kelley owe the money because Production Systems, Incorporated, was rendered insolvent by the transfer of assets to the Kelleys. And the Court, even granting that the original petition includes the allegation that Buzzy P’s assets or Production Systems assets were transferred to Kelley Consulting and that Kelley Consulting then transferred these to Mr. and Mrs. Kelley. Even granting if that were correct, the Court does not find that under the liquidation and dissolution articles of the corporation code that that imposes any kind of liability on the Kelleys or Kelley Consulting, if it did in fact render Buzzy P insolvent. Of course, distribution of assets pursuant to a liquidation plan should render a corporation insolvent. That’s the |nwhole purpose. But that doesn’t impose any personal liability on the ... recipients.
[[Image here]]
[T]he second amended petition alleges that Mr. and Mrs. Kelley are liable under Title 12, Section 93, because of an unlawful distribution of assets to a shareholder. And that’s simply not correct. It was a lawful distribution to Kelley Consulting, Incorporated. Even if I expand it, that Kelley Consulting, Incorporated, really means Mr. Kelley because he was the sole shareholder of that corporation, it’s still not an unlawful distribution.
And it also alleges a cause of action under Title 12, Section 95, based on fraud. And as I’ve said, I have absolutely no evidence whatsoever to support any allegation that anything Mr. Kelley or his corporations did in this case was fraudulent.
*25 Similarly, we conclude that Eagle did not satisfy the burden of proof required to prevail under La. R.S. 12:93(D). There was no unlawful distribution of assets within the meaning of the statutes relied upon by Eagle. Due to Eagle’s own negligence, at the time of the dissolution of Buzzy P and KCI, Mr. Kelley had no knowledge, nor any reason to believe, that any funds were either due and owing or would be owed in the future to Eagle. All of the companies’ outstanding debts were paid, and there were no creditors remaining. Mr. Kelley proceeded with the dissolution and distribution of assets of Buzzy P and KCI as authorized by law. Accordingly, based on the unique facts and circumstances herein, we find no error in the trial court’s conclusion that Mr. and Mrs. Kelley bear no personal liability for the debt in question. This assignment of error is without merit.
CONCLUSION
For the above and foregoing reasons, and finding no manifest error in the trial court’s judgment, we affirm in all respects and assess all costs associated with this appeal to Eagle Pacific Insurance Company.
AFFIRMED.
DOWNING, J., dissents and assigns reasons.
McCLENDON, J., dissents.

. According to the record, when Eagle issued the insurance policy in question, this company was operating under the name of Production Systems, Inc. However, effective October 1, 1997, Mr. Kelley sold certain assets of Production Systems, Inc. and the right to use the company’s name to a third party. Thereafter, Mr. Kelley changed the name of his company to Buzzy P, Inc. To avoid any confusion, we will refer to this company as Buzzy P.