STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 CA 0926

REGIONS BANK AND REGIONS COMMERCIAL EQUIPMENT
FINANCE, LLC

VERSUS

MICHAEL EYMARD, RAIMY EYMARD, LOUIS EYMARD, II AND
OFFSHORE MARINE CONTRACTORS, INC.

CONSOLIDATED WITH

NUMBER 2021 CA 0927

AVIS BOURG, JR.

VERSUS

MICHAEL EYMARD, LOUIS J. EYMARD, II AND
RAIMY EYMARD

Judgment Rendered: **MAY** 2 3 2022

Appealed from the
Seventeenth Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Docket Number 131,426 c/w 131,524

The Honorable F. Hugh Larose, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

Philip K. Jones, Jr.
Joseph P. Hebert
New Orleans, LA

Counsel for Plaintiff/1st Appellant,
Bluehenge Capital Secured Debt SBIC,
LP, as Successor in Interest to Regions
Bank and Regions Commercial
Equipment Finance, LLC

J. Eric Lockridge
Mark D. Mese
James R. Chastain, Jr.
Ahmed M. Mohamed
Baton Rouge, LA

Counsel for Plaintiff/Intervenor/Appellee,
Regions Bank and Regions Commercial
Equipment Finance, LLC

Martin S. Bohman
Harry E. Morse
New Orleans, LA

Counsel for Defendant/2nd Appellant,
Offshore Marine Contractors, Inc.

Daniel A. Cavell
Thibodaux, LA

Counsel for Defendant/Appellee,
Michael M. Eymard, Raimy D. Eymard,
Louis J. Eymard II

Robert J. Burvant
Henry A. King
Timothy S. Madden
John A. Cangelosi
New Orleans, LA

Counsel for Defendant/Appellee,
Avis J. Bourg, Jr.

Blair E. Boyd
Beverly A. Delaune
New Orleans, LA

Counsel for Defendant/Appellee,
Pepperman, Emboulas, Schwartz &
Todaro, L.L.C.

************

BEFORE: WHIPPLE, C.J., PENZATO, AND HESTER, JJ.

**WHIPPLE, C.J.**

In this matter, Bluehenge Capital Secured Debt SBIC, LP and Offshore Marine Contractors, Inc. appeal a judgment of the trial court maintaining a peremptory exception raising the objection of peremption and dismissing their claims against Avis J. Bourg, Jr., with prejudice. For the reasons that follow, we affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Avis J. Bourg, Jr. and Michael Eymard, Louis Eymard II, and Raimy Eymard (collectively "the Eymards"), owned Offshore Marine Contractors ("OMC"), Offshore Marine, Inc. ("OMI"), Tram Aviation, LLC, and Tram Shipyard, Inc.[1] ("the companies").[2] In 2012, Bourg filed a derivative suit against the companies and the Eymards, in their capacities as officers and directors of the companies, alleging breaches of the Eymards' fiduciary duties. On November 24, 2014, the parties agreed to settle their differences and executed redemption and sale agreements authorized and signed by the Eymards, as directors and/or managers of each of the companies, whereby the parties agreed to redeem all shares of OMI stock and/or membership interests owned by Bourg for consideration in the amount of $10,000,000.00, and all shares of OMC stock and/or membership interests owned by Bourg for consideration in the amount of $1,750,000.00. Pursuant to the redemption agreements, redemption payments were made to Bourg in the amount of

---

[1] In some instances, this corporation is also referred to in the record as "Tram Shipyards, Inc."

[2] Bourg owned a twenty-five percent interest in the companies and the Eymards collectively owned seventy-five percent of the shares or membership interests in the companies.

$3,000,000.00 on December 9, 2014,[3] and in the amount of $3,500,000.00 on December 29, 2014,[4] in partial satisfaction of the amounts due.

In connection with the settlement, OMC and OMI also executed a promissory note on December 11, 2014 payable to Bourg for the remaining funds owed for his stock in the amount of $6,000,000.00,[5] which was secured by personal guaranties by the Eymards, a corporate guaranty from their wholly owned affiliate, Glencoe, Inc., and a second preferred ship mortgage on the lift boat L/B KATHRYN EYMARD.[6] On this same date OMI merged with and into OMC, and on April 30, 2015, Glencoe merged with and into OMC. As the surviving entity from these two mergers, OMC assumed all of OMI and Glencoe's liabilities. Although some payments were made to Bourg on the promissory note, including a February 27, 2017 payment in the amount of $500,000.00 in connection with the sale of the L/B KATHRYN EYMARD, the note ultimately went into default for non-payment.

In November of 2016, Regions Bank and/or Regions Commercial Equipment Finance, LLC ("Regions"), as a creditor of OMC, made demand upon Bourg for the sums paid, contending that the payment of the above funds to Bourg constituted "unlawful distributions" pursuant to LSA-R.S. 12:93, and, as such, were subject to a "claw-back" action by Regions in its capacity as a creditor of OMC. Thereafter, on November 23, 2016, Regions and Bourg entered into a tolling agreement, wherein they agreed that all prescriptive periods relating to the commencement of litigation by Regions against Bourg for causes of actions arising from payments made to

---

[3]$500,000.00 of this payment was for Bourg's OMC stock and $2,500,000.00 represented payment of Bourg's OMI stock.

[4]$250,000.00 of this payment was for Bourg's OMC stock; $2,500,000.00 was for Bourg's OMI stock; and $750,000.00 was for reimbursement of Bourg's legal fees and expenses.

[5]OMC owed Bourg $1,000,000.00 for Bourg's OMC stock and OMI owed Bourg $5,000,000.00 for Bourg's OMI stock.

[6]For convenience, we refer to the redemption agreement and promissory note collectively herein as the "settlement agreements."

4

Bourg in connection with the settlement agreements were tolled and extended through May 22, 2017. The parties subsequently amended the tolling agreement to extend the tolling period through November 22, 2017.

On November 28, 2016, Regions filed a petition for damages against the Eymards and OMC in the 17th Judicial District Court, contending that the companies and the Eymards, in their capacity as directors, breached a duty to Regions by authorizing the redemption of corporate shares without ensuring that the payments would not render the companies insolvent. Region's suit was assigned docket number 131426 ("Regions' suit"). Regions averred: that the stock redemption was in violation of LSA-R.S. 12:55, as the stock redemption and settlement payments rendered the companies insolvent; that the Eymards failed to exercise reasonable care and to act as reasonably prudent directors by approving the stock redemption and settlement agreement; and that the Eymards were jointly and severally liable to the creditors of the corporations pursuant to LSA-R.S. 12:92. Regions thus sought a judgment against the Eymards for all settlement payments made or promised to Bourg, plus interest, attorney's fees, and costs. On December 9, 2016, Bourg likewise filed suit against the Eymards in the 17th Judicial District Court, seeking defense, indemnity, and/or reimbursement and money damages, which was assigned docket number 131524 ("Bourg's suit").

Upon the expiration of the tolling agreement with Bourg in November of 2017, Regions supplemented and amended its petition to add Bourg as a defendant in its suit and also intervened in Bourg's suit, asserting simliar claims against Bourg in both proceedings.[7] Regions essentially restated its claims against the companies and the Eymards, contending that the companies became insolvent as a result of the redemption payments and that additional payments, including payments on the

---

[7]Regions' supplemental and amending petition was filed on November 21, 2017, and its petition of intervention was filed on November 27, 2017.

promissory note and a payment in connection with the sale of the L/B KATHRYN EYMARD, "deepened" their insolvency. Regions averred that the companies approved the payments in violation of LSA-R.S. 12:55 and that Bourg, as a shareholder, received an unlawful distribution of assets and was personally liable to the creditors of the corporation up to the amounts received by him pursuant to LSA-R.S. 12:93. Regions thus sought judgment awarding it the promissory note and all future payments on the note, or alternatively, that the court declare the promissory note void and the redemption agreement null, and that judgment be rendered against the companies, the Eymards, and Bourg, jointly, severally, and in solido, in an amount equal to all of the redemption payments and additional payments made to Bourg.

Pursuant to a motion by the Eymards and OMC, on February 8, 2018, Regions' suit and Bourg's suit were consolidated in the trial court. Bourg answered Regions' first supplemental and amending petition and asserted affirmative defenses. OMC also answered Regions' amended petition and, on July 29, 2019, asserted a cross-claim against Bourg, averring that at the time OMC entered into the redemption agreement with Bourg, it had no surplus capital and was "either insolvent or made insolvent by the redemption and ancillary payments," rendering the redemption agreement and promissory note "illegal contracts under Louisiana law" and absolute nullities. OMC thus sought a declaratory judgment in its favor declaring that the redemption agreement and promissory note are null and void and that no future payments under the promissory note are owed.

On March 6, 2018, Regions executed an assignment whereby it transferred, assigned, and conveyed to Bluehenge Capital Secured Debt SBIC, LP ("Bluehenge") all of its right, title, and interest in the debt owed by the companies to Regions. Thereafter, on April 5, 2018, Bluehenge filed a motion to substitute itself as plaintiff and intervenor in the place of Regions in the litigation, which was granted by the

6

trial court. Bourg answered Bluehenge's petition for intervention and asserted affirmative defenses.

Thereafter, Bluehenge filed a motion for summary judgment, averring that the payments made to Bourg were prohibited "unlawful distributions" and seeking a judgment against Bourg and the Eymards for the total amount of funds paid to Bourg, as well as a declaration that the promissory note in favor of Bourg was an absolute nullity. OMC filed a motion for summary judgment on its cross-claim against co-defendant Bourg, seeking a judgment declaring the promissory note absolutely null and unenforceable against OMC.

Bourg filed a peremptory exception raising the objection of peremption, contending that all claims asserted by Bluehenge and OMC against him were barred by the peremptive period in LSA-R.S. 12:93(D), which provides that an action to recover an unlawful distribution must be brought within two years from the date on which the unlawful distribution was received and must be dismissed with prejudice.[8] Following the filing of oppositions by OMC and Bluehenge, Bourg's exception was heard by the trial court on February 5, 2021. On March 25, 2021, the trial court signed a judgment, maintaining the exception of peremption and finding that the controlling statutes, LSA-R.S. 12:92(D), 12:93(D), and 12:93(E), intended that a situation arising in this manner be governed by a two-year peremptive period, and therefore, Bluehenge's suit against Bourg, filed on November 21, 2017, was untimely as beyond the two-year peremptive period. The trial court also rendered written reasons for judgment. The trial court signed an amended judgment on April

---

[8]Bourg also filed a supporting memorandum, wherein he averred that OMC filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code and that pursuant to the reorganization plan ("the plan"), Bluehenge became the owner of 100% of the shares of OMC stock. Bourg contended that pursuant to the plan, his claim on the note against OMC was subordinated pursuant to Section 510 of the United States Bankruptcy Code and that he thus received no property under the plan, such that his right to collect the remaining amounts owed by OMC was effectively terminated. Bourg also contended that Bluehenge, the companies, and the Eymards entered into a settlement agreement in connection with the plan, thereby releasing the Eymards from any potential liability to Bluehenge.

23, 2021, which amended the original judgment to include language dismissing, with prejudice, all claims against Bourg by Bluehenge and OMC. Thereafter, Bluehenge and OMC each filed devolutive appeals of the March 25, 2021 judgment and the April 23, 2021 amended judgment.[9]

Bluehenge contends on appeal that the trial court erred in:

(1) finding that the two-year time period within which to bring an action under LSA-R.S. 12:93(D) was peremptive in nature such that the tolling agreement was deemed ineffective;

(2) finding that the filing of an action against the Eymards, who were solidary obligors with Bourg, did not preserve the cause of action against Bourg;

(3) finding that the granting of a preferred lift boat mortgage by an affiliated corporation did not constitute an "unlawful distribution" under LSA-R.S. 12:93(D); and

(4) finding that the time period for declaring a promissory note to be an absolute nullity under LSA-R.S. 12:55 was subject to the two-year time period contained in LSA-R.S. 12:93(D).

OMC appeals the dismissal of its declaratory judgment action for nullity pursuant to LSA-R.S. 12:55, contending that the trial court erred in:

(1) finding that the execution of the promissory note funding the stock redemption triggered the running of prescription and/or peremption under LSA-R.S. 12:55 as opposed to the actual payments, which have not yet been made;

---

[9]The record reflects that following the filing of these appeals by Bluehenge and OMC, the trial court heard Bluehenge's motion for summary judgment against Bourg and the Eymards on May 5, 2021. Considering that all of Bluehenge's claims against Bourg were dismissed as perempted pursuant to the April 23, 2021 amended judgment and that the Eymards filed no opposition to the motion, the trial court found no genuine issue of material fact remained and that Bluehenge was entitled to judgment against the Eymards as a matter of law. The trial court thus signed a judgment on May 19, 2021, granting Bluehenge's motion for summary judgment and rendering judgment in favor of Bluehenge and against the Eymards, *in solido*, in the amount of $6,411,311.97, plus legal interest from the date of the filing of the petition for damages and court costs.

(2) not considering evidence submitted in support of OMC's insolvency, which it contends is necessary for determination of a claim predicated on a violation of LSA-R.S. 12:55; and

(3) dismissing OMC's claim for declaratory judgment under LSA-R.S. 12:55, given that there was unopposed evidence that LSA-R.S. 12:55 was violated when the redemption occurred rendering the redemption and the accessory note absolute nullities not subject to the running of prescription or peremption.

## DISCUSSION

### Standard of Review

The objection of peremption is raised by the peremptory exception. LSA-C.C.P. art. 927(A)(2). Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. However, if peremption is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not been perempted. See Lomont v. Bennett, 2014-2483 (La. 6/30/15), 172 So. 3d 620, 626-627, cert. denied, 577 U.S. 1139, 136 S. Ct. 1167, 194 L.Ed.2d 178 (2016).

At a hearing on a peremptory exception raising the objection of peremption pleaded prior to trial, evidence may be introduced to support or controvert the exception. LSA-C.C.P. art. 931. If evidence is introduced at the hearing, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. Satterfield & Pontikes Construction, Inc. v. Breazeale Sachse & Wilson, LLP, 2015-1355 (La. App. 1st Cir. 1/10/17), 212 So. 3d 554, 558, writ denied, 2017-0268 (La. 3/31/17), 217 So. 3d 363, citing Lomont v. Bennett, 172 So. 3d at 627. However, in the absence of evidence, an exception of peremption must be decided upon the facts alleged in the petition with all of the allegations accepted as true. Beverly Construction, L.L.C. v. Wadsworth Estates, L.L.C., 2019-0911 (La. App. 1st Cir. 2/26/20), 300 So. 3d 1, 5. In a case involving no dispute regarding material facts, only the determination of a legal issue, a reviewing court must apply

9

the *de novo* standard of review, under which the trial court's legal conclusions are not entitled to deference. Shannon v. Vannoy, 2017-1722 (La. App. 1st Cir. 6/1/18), 251 So. 3d 442, 449.

We note at the outset that in the instant case, the parties failed to formally admit any evidence in favor of or in opposition to Bourg's exception of peremption. Although the parties attached exhibits to their memoranda in support of and in opposition to the peremptory exception, the record reflects that these documents were not admitted into evidence at the hearing. Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Denoux v. Vessel Management Services, Inc., 2007-2143 (La. 5/21/08), 983 So. 2d 84, 88. Moreover, as recognized in the jurisprudence, documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. Denoux v. Vessel Management Services, Inc., 983 So. 2d at 88. Accordingly, on review of peremptory exceptions, appellate courts cannot consider exhibits filed into the record as attachments to memoranda in determining the issues on appeal.[10] Cyprian v. Tangipahoa Parish School System, 2021-0238 (La. App. 1st Cir. 11/16/21), 332 So. 3d 689, 691, citing Union Planters Bank v. Commercial Capital Holding Corporation, 2004-0871 (La. App. 1st Cir. 3/24/05), 907 So. 2d 129, 130.

Thus, in this matter, where no evidence was introduced at the hearing on the exception, we accept as true the facts alleged in the petitions and apply the *de novo*

---

[10]Pursuant to *ex parte* motions, Bluehenge and OMC obtained orders designating the record for appeal. Bourg subsequently filed an *ex parte* motion to supplement the designations of the record on appeal, averring that the exhibits in support of his peremptory exception of peremption were "inadvertently switched" with exhibits in support of a motion to compel filed by Bourg the same date. However, the parties' respective designation and supplementation of the record on appeal does not cure their failure to introduce the evidence at the hearing on the peremptory exception.

standard to our review of the trial court's legal conclusions.[11]  See Damond v. Marullo, 2019-0675 (La. App. 1st Cir. 6/22/20), 307 So. 3d 234, 240, writ denied sub nom. Damond v. Marullo, 2020-01243 (La. 3/23/21), 312 So. 3d 1104, and cert. denied sub nom. Damond v. Marullo, 142 S. Ct. 567, 211 L. Ed. 2d 354 (2021).

The petitions of Bluehenge (formerly Regions) and OMC against Bourg allege that the redemption agreements were entered into on November 24, 2014. OMC's petition further avers that the promissory note was executed on December 11, 2014. Bluehenge's petition against Bourg was filed in November of 2017, and OMC's cross-claim for declaratory judgment against Bourg was filed in July of 2019. To the extent that the dates of any of the purported unlawful distributions, as alleged on the face of their petitions, occurred more than two years prior to the filing of their respective pleadings, Bluehenge and OMC bear the burden of establishing that their actions were not perempted. See LSA-R.S. 12:93(D). Otherwise, Bourg bears the burden of proof.[12]

### Applicable Law

We note that effective January 1, 2015, Section 5 of Louisiana Acts 2014, No. 328, repealed former Chapter 1, "Business Corporation Law," consisting of LSA-R.S. 12:1 to 12:178, while Section 1 enacted LSA-R.S. 12:1-101 to 12:1-1704, comprising Chapter 1, "Business Corporation Act" of Title 12 of the Louisiana Revised Statutes. For purposes of our discussion herein, we rely upon the version of these statutes in effect at the time the settlement agreements were entered into in

---

[11]For purposes of reviewing Bourg's exception to the claims asserted by OMC, we must accept as true the facts alleged in OMC's cross-claim against Bourg. With regard to Bourg's exception as to the claims asserted by Bluehenge, we likewise accept as true the facts alleged in Bluehenge's petition for intervention against Bourg and Bluehenge's supplemental petition adding Bourg as a defendant, which incorporated its original petition in its entirety. The claims alleged in Bluehenge's petitions against Bourg are identical.

[12]Failure to adequately prepare the record by neglecting to offer matters into evidence can alter the outcome of a case, especially in an exception where the burden of proof may shift between the parties. See Cichirillo v. Avondale Industries, Inc., 2004-2894 (La. 11/29/05), 917 So. 2d 424, 428, n. 7.

11

2014. See LSA-C.C. art. 6; see also Segura v. Frank, 93-1271 (La. 1/14/94), 630 So. 2d 714, 721.

Louisiana Revised Statute 12:55 prohibited the purchase or redemption of corporate shares by a corporation when the corporation is insolvent or the purchase or redemption renders the corporation insolvent, in pertinent part, as follows:

> A. **A corporation shall not purchase or redeem its shares when it is insolvent, or when such purchase or redemption would render it insolvent**, or at a price, in the case of shares subject to redemption, exceeding the redemption price thereof, or when its net assets are less than, or such purchase or redemption would reduce its net assets below, the aggregate amount payable on liquidation upon any issued shares, which have a preferential right to participate in the assets in event of liquidation, remaining after the purchase or redemption and cancellation of any shares in connection therewith.

(Emphasis added.)

Louisiana Revised Statute 12:92 provided that officers and directors who authorize unlawful distributions are liable jointly and severally to the corporation, or creditors of the corporation, or both, in an amount equal to the unlawful distribution, in pertinent part, as follows:

> A. If a corporation has transacted any business in violation of R.S. 12:26, the officers who participated therein and the directors shall be liable jointly and severally with the corporation and each other for the debts or liabilities of the corporation arising therefrom.[13]
> B. Any officers or directors who knowingly, or without the exercise of reasonable care and inquiry, consent to the issuance of shares in violation of the provisions of this Chapter or of prior statutes, shall be liable jointly and severally to the corporation and any person who suffers any loss or damage as a result thereof.
> C. If property or services taken in payment for shares are grossly overvalued contrary to the provisions of this Chapter, the officers or directors who knowingly, or without the exercise of reasonable care and inquiry, consented thereto, or voted in favor thereof, shall be liable jointly and severally to the corporation for the benefit of creditors or shareholders, as their respective and relative interests may appear, for any loss or damage arising therefrom.

---

[13]Louisiana Revised Statue 12:26 provided that:

A corporation formed under this Chapter shall not incur any debts or begin the transaction of any business, except business incidental to its organization, or to the obtaining of subscriptions to, or payment for, its shares, until the amount of paid-in capital with which it will begin business, if stated in the articles, has been paid in full.

**D. If any dividend shall be paid in violation of this Chapter, or if any other unlawful distribution, payment or return of assets be made to the shareholders, or if the corporation purchase or redeem any of its own shares in violation of this Chapter, the directors who knowingly, or without the exercise of reasonable care and inquiry, voted in favor thereof shall be liable jointly and severally to the corporation, or to creditors of the corporation, or to both, in an amount equal to the amount of the unlawful distribution.** *An action to enforce such liability must be brought within two years from the date on which the distribution was made, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.*

E. A director shall, in the performance of his duties, be fully protected in relying in good faith upon the records of the corporation and upon such information, opinions, reports, or statements presented to the corporation, the board of directors, or any committee thereof by any of the corporation's officers or employees, or by any committee of the board of directors, or by any counsel, appraiser, engineer, including a petroleum reservoir engineer, or independent or certified public accountant selected with reasonable care by the board of directors or any committee thereof or any officer having the authority to make such selection, or by any other person as to matters the director reasonably believes are within such other person's professional or expert competence and which person is selected with reasonable care by the board of directors or any committee thereof or any officer having the authority to make such selection.

(Footnote and emphasis added.)

Louisiana Revised Statute 12:93 also set forth the liability of subscribers and shareholders, and directors, providing that every shareholder who receives an unlawful distribution shall be liable to the corporation or its creditors in an amount not exceeding the amount he received pursuant to LSA-R.S. 12:93(D), and that when directors are liable for consenting to an unlawful distribution, the director has a cause of action for indemnity against the shareholder for the amount of the unlawful distribution received by the shareholder pursuant to LSA-R.S. 12:93(E), as follows:

**D. Every shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him.** *An action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received, and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.*

**E. When the directors are held liable solely because of having negligently consented to or participated in any unlawful dividend,**

13

> distribution, payment or return of assets, the directors shall have, to the extent of the payments made by them, a cause and right of action for indemnity against each of the shareholders for the proportionate amount of the unlawful distribution received by such shareholder. *This action must be brought within two years from the date of payment by the directors on account of the liability imposed by R.S. 12:92(D), and this time limit shall not be subject to suspension on any ground, nor to interruption except by timely suit.*

(Emphasis added.)

### Two-Year Time Limitation in LSA-R.S. 12:93(D)

### (Bluehenge's Assignment of Error No. 1)

In Bluehenge's first assignment of error, it contends that the trial court erred in finding that the two-year time period to bring **an action to enforce liability against a shareholder** set forth in LSA-R.S. 12:93(D) was peremptive and not subject to suspension by a tolling agreement. We find no merit to this contention.

Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. LSA-C.C. art. 3458. Peremption may not be renounced, interrupted, or suspended. LSA-C.C. art. 3461.

As the Louisiana Supreme Court has explained, when a statute creates a right of action and stipulates the delay within which that right is to be executed, the delay thus fixed is not one of prescription, but is one of peremption. Naghi v. Brener, 2008-2527 (La. 6/26/09), 17 So. 3d 919, 923. Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. Stated differently, after the limit of time expires, the cause of action no longer exists; it is lost. Naghi v. Brener, 17 So. 3d at 923, citing Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899, 901 (1900); Borel v. Young, 2007-0419 (La. 11/27/07), 989 So. 2d 42, 48 ("[P]eremption is a period of time, fixed by law, within which a right must be exercised or be forever lost."); see also LSA-C.C. art. 3458, Revision Comments – 1982 (b). Public policy requires that rights to which peremptive periods attach are

14

to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. However, as an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended. Naghi v. Brener, 17 So. 3d at 923.

Louisiana Revised Statute 12:93(D) specifically fixes a period of time to bring an action to enforce the shareholder's liability to the corporation or creditors of the corporation and provides that the time period may not be suspended. Thus, such an action "**must be brought within two years** from the date on which the unlawful distribution was received, and **this time limit shall not be subject to suspension** on any ground, nor to interruption except by timely suit." Likewise, LSA-R.S. 12:93(E) provides that when a director is held liable, a director's cause of action for indemnity against the shareholder "**must be brought within two years** from the date of payment by the directors on account of the liability imposed by [LSA-]R.S. 12:92(D), and **this time limit shall not be subject to suspension** on any ground, nor to interruption except by timely suit."

The provisions of LSA-R.S. 12:93(D) and (E) clearly and explicitly fix a period of time and further expressly provide that the stated time limit shall not be subject to suspension on any ground. Because the statute sets forth a fixed period of time that is not subject to suspension, we find no error in the trial court's determination that the legislature clearly intended to set forth a peremptive period.

Moreover, this court has previously held in McGregor v. United Film Corp., 351 So. 2d 1224, 1229 (La. App. 1st Cir. 1977), writ denied, 353 So. 2d 1335 (La. 1978), and writ denied, 353 So. 2d 1335 (La. 1978), and writ denied, 353 So. 2d 1341 (La. 1978), that the provisions of LSA-R.S. 12:93(D) are peremptive ("This liability is further limited by the peremption provisions of the statute, under which the action to enforce the liability must be brought within two years from [the date

15

on] which the unlawful distribution was received."). The peremptive nature of LSA-R.S. 12:93 as well as LSA-R.S. 12:55 have also been recognized by the Fourth Circuit Court of Appeal. See Security Center Protection Services, Inc. v. All-Pro Security, Inc., 94-1317 (La. App. 4th Cir. 2/23/95), 650 So. 2d 1206, 1208 ("Under the provisions of [LSA-]R.S. 12:93(D), quoted above, SCPS's suit to recover the assets it alleges were unlawfully distributed to Clement under the provisions of [LSA-]R.S. 12:55(A) is barred by peremption unless it was filed 'within two years of the date on which the unlawful distribution was received.'").

Finally, because a peremptive period cannot be renounced, interrupted or suspended, a peremptive period may not be altered by contract or agreement of the parties. Taranto v. Louisiana Citizens Property Insurance Corporation, 2010-0105 (La. 3/15/11), 62 So. 3d 721, 735. Accordingly, we find that the tolling agreement entered into by the parties herein cannot serve to extend the peremptive period.

For the reasons stated above, and where this court has specifically recognized that the two-year time limitation period set forth in LSA-R.S. 12:93 is peremptive, we find no error in the trial court's legal conclusion that the statute is peremptive. See Lafourche Parish Water District No. 1 v. Digco Utility Construction, L.P., 2018-1112 (La. App. 1st Cir. 3/13/19), 275 So. 3d 20, 25-26, writ denied, 2019-0577 (La. 6/17/19), 274 So. 3d 1257. Accordingly, we find no merit to this assignment of error.

## Liability *In Solido*

## (Bluehenge's Assignment of Error No. 2)

In its second assignment of error, Bluehenge contends that the trial court erred in finding that its cause of action against the Eymards did not preserve its cause of action against Bourg as a solidary obligor. Bluehenge concedes, however, that the Civil Code articles and jurisprudence do not address this assertion as an alleged

exception to peremption and that it has not found any jurisprudence specifically addressing this issue.

Bourg contends that the alleged liability of Bourg and the Eymards arise from separate statutory grounds of liability that do not give rise to a solidary obligation, as Bluehenge's claims against the Eymards as **officers and directors** are predicated on LSA-R.S. 12:92(D) and Bluehenge's claims against Bourg are predicated on liability as a **shareholder** pursuant to LSA-R.S. 12:93(D). Nonetheless, Bourg avers that even if he were deemed solidarily liable with the Eymards for any alleged unlawful distribution, the law is clear that peremption cannot be interrupted, suspended, or renounced. We agree.

As stated above, peremption may not be renounced, interrupted, or suspended. LSA-C.C. art. 3461. Moreover, in Naghi v. Brener, the Supreme Court recognized that the relating back of an amended petition adding a plaintiff is not allowed to avoid the running of a peremptive period, as follows:

> While Article 1153[14] does not specifically refer to its effect on statutory time limitations for filing suit, there can be no question but that "relation back" of an untimely filed amended petition directly interferes with the application of prescription or peremption by allowing a claim that would have otherwise prescribed or been perempted to proceed. Thus, we cannot consider Article 1153 in a vacuum without considering whether it has a prohibitive effect on the operation of peremption.
>
> * * * * *
>
> Because it is well established that "nothing may interfere with the running of a peremptive period," and avoiding the peremptive period certainly interferes with the running of that period, relation back of an amended or supplemental pleading adding a plaintiff is not allowed to avoid the running of a peremptive period such as that found in La. R.S. 9:5605. Further, the relation back theory assumes that there is a legally viable claim to which the pleading can relate back.

---

[14]Louisiana Code of Civil Procedure article 1153 provides that:

[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.

Naghi v. Brener, 17 So. 3d at 924-925 (citation omitted).

Because the avoidance of the time period interferes with the running of that time period, relation back of a petition adding a new defendant is not permitted where the time period involved is peremptive. Stewart v. Continental Casualty Company, Inc., 2011-0505 (La. App. 1st Cir. 11/9/11), 79 So. 3d 1047, 1053, writ denied, 2011-2721 (La. 2/17/12), 82 So. 3d 285. Because the expiration of a peremptive time period destroys the cause of action, there is nothing for an amended or supplemental petition to relate back to under LSA-C.C.P. art. 1153. Stewart v. Continental Casualty Company, Inc., 79 So. 3d at 1053.

For these reasons, on review, we find no basis for concluding that a timely suit against the Eymards and OMC would interrupt the peremptive period against Bourg. Because Bluehenge did not file suit against Bourg before the peremptive period of LSA-R.S. 12:93(D) expired, Bluehenge's amending petition attempting to do so cannot relate back to its original petition under LSA-C.C.P. art. 1153.

Thus, this assignment of error also lacks merit.

**Preferred Lift Boat Mortgage**

**(Bluehenge's Assignment of Error No. 3)**

Bluehenge contends that the trial court erred in concluding that ownership of the payment realized on the sale of the L/B KATHRYN EYMARD was received by Bourg when the mortgage of the vessel was granted to him. Specifically, Bluehenge contends that the $500,000.00 payment made to Bourg by OMC on February 27, 2017, from the proceeds of the sale of the L/B KATHRYN EYMARD, constitutes an "unlawful distribution" made within two years of the filing of its November 21, 2017 supplemental petition adding Bourg as a defendant. Bluehenge contends that this purported unlawful distribution was only received when Bourg received the payment of $500,000.00 from the sale proceeds, not when Bourg was granted an ownership interest through the preferred ship mortgage.

18

Bourg counters that pursuant to LSA-R.S. 12:93(D), any claims for shareholder liability must be asserted within two years of the date on which the unlawful distribution was received and that the ownership interest he acquired through the preferred mortgage asset was received by him at the time his interest in the L/B KATHRYN EYMARD arose, i.e., when confected on November 24, 2014. Bourg contends that he "received" the asset in November of 2014, and that the mortgaged asset was merely converted to cash through the sale of the vessel on February 27, 2017. Bourg further contends that since OMC had no right or interest in the sale proceeds, OMC did not make a "distribution" to Bourg when the vessel was sold. Instead, Bourg avers, the sales proceeds were momentarily placed into OMC's account for immediate transfer to the mortgagees (Bourg and MidSouth Bank).

On review, and considering allegations which must be taken as true, we note that in its petitions against Bourg, Bluehenge averred that to secure repayment of the promissory note, Glencoe, Inc., **"a related company in which Bourg did not own stock,"** executed a corporate guaranty and granted Bourg a second preferred ship mortgage on the lift boat L/B KATHRYN EYMARD. Bluehenge further alleged in its petitions that additional payments to Bourg included a $51,959.94 payment on January 14, 2014 and a $500,000.00 payment on or about February 27, 2017, in connection with the sale of the L/B KATHRYN EYMARD. Bluehenge also alleged that on or about April 30, 2015, Glencoe, Inc. merged with and into OMC. As noted above, on review of the exception, all of these allegations must be accepted as true. See Beverly Construction, L.L.C. v. Wadsworth Estates, L.L.C., 300 So. 3d at 5.

In doing so, we note that although Bourg contends that the mortgage was conveyed to him on November 24, 2014, which he avers is the "operative date" of the alleged unlawful distribution, the date the mortgage interest was conveyed to Bourg is not disclosed in Bluehenge's petitions against Bourg. Because the date of

19

the alleged unlawful distribution was not set forth in the petitions, the burden of proof remained with Bourg, as the party who pled the exception of peremption, to establish that the distribution occurred over two years prior to the filing of the petitions. See Cichirillo v. Avondale Industries, Inc., 917 So. 2d at 428. However, Bluehenge's petitions do set forth that the mortgage to Bourg was granted by Glencoe, Inc. prior to its merger with and into OMC on April 30, 2015.

As pertinent hereto, LSA-R.S. 12:93(D) provides that *a shareholder* who receives an unlawful distribution of assets is liable to the corporation or creditors of the corporation and that an action to enforce this liability must be brought within two years from the date on which the unlawful distribution was received. See also Eagle Pacific Insurance Co. v. Production Systems, Inc., 2003-0457 (La. App. 1st Cir. 7/14/04), 887 So. 2d 18, 24, writ denied, 2004-2100 (La. 11/24/04), 888 So. 2d 230, citing AMP Service Corporation v. Richard, 419 So. 2d 911, 915 (La. 1982) (In order for a creditor to obtain recovery under LSA-R.S. 12:93, there must be an unlawful distribution of a corporate asset *to a shareholder*.). However, according to Bluehenge's petitions, Bourg did not own stock in Glencoe, Inc. Where the petitions before us set forth that Glencoe, Inc., executed a corporate guaranty and granted a second preferred ship mortgage on the L/B KATHRYN EYMARD to Bourg, who is not a shareholder of Glencoe, Inc., Bourg has failed to establish that LSA-R.S. 12:93(D), governing shareholder liability, and its two-year preemptive period, applied to this distribution.

Accordingly, where the facts in Bluehenge's petitions do not establish that Bourg was a shareholder of Glencoe, Inc., we find no support in the record to conclude that Bluehenge's claims to recover the purported unlawful distribution of the sale proceeds pursuant to the mortgage on the L/B KATHRYN EYMARD were barred by the two-year preemptive period set forth in LSA-R.S. 12:93(D). Thus, the portion of the trial court's judgment sustaining Bourg's exception of peremption as

20

to Bluehenge's claims against Bourg for the purported unlawful distribution of the proceeds on the L/B KATHRYN EYMARD is reversed.

**Nullity Pursuant to LSA-R.S. 12:55**

**(Bluehenge's Assignment of Error No. 4)**

In its final assignment of error, Bluehenge contends that the trial court erred in finding that its action to declare the promissory note an absolute nullity under LSA-R.S. 12:55 was precluded by the two-year time period contained in LSA-R.S. 12:93(D).

Although Bluehenge's petitions aver that OMC executed a promissory note for its remaining $6,000,000.00 obligation to Bourg, the petitions do not set forth the date the promissory note was executed. As such, we are unable to ascertain the date the note was executed. Since Bluehenge's claims are not preempted on the face of its petition, Bourg had the burden of proving the facts to support his peremptory exception. Without offering evidence to establish the pertinent date, Bourg failed to carry his burden of proof. See Bank v. Rayford, 2017-1244 (La. App. 1st Cir. 3/29/18), 247 So. 3d 733, 737.

On the record before us, we find the trial court erred in its conclusion that Bluehenge's claims to have the note declared null were preempted, as Bourg failed to establish the date the note was confected. Accordingly, we also reverse the portion of the trial court's judgment finding that Bluehenge's claims to declare the promissory note a nullity were preempted.

**Nullity Pursuant to LSA-R.S. 12:55**

**(OMC's Assignment of Error No. 3)**

OMC contends that the trial court erred as a matter of law in finding that its action to declare the promissory note an absolute nullity pursuant to LSA-R.S. 12:55 was precluded because it was not filed within the two-year peremptive period of

21

LSA-R.S. 12:93(D), as preemption does not run against an absolute nullity. OMC essentially argues that since LSA-R.S. 12:55 fails to set forth a time period within which to bring an action, there simply is no prescriptive period, much less a peremptive period, that bars an action to prevent a corporation from performing an act prohibited by LSA-R.S. 12:55. OMC alleges in its petition for cross-claim against Bourg, filed on July 29, 2019, that the promissory note was executed on December 11, 2014. Where its claims are preempted on the face of its petition, the burden shifts to OMC to show the action is not preempted. See Bank v. Rayford, 247 So. 3d at 736.

Bourg contends that while LSA-R.S. 12:55 prohibits a corporation from redeeming shares that would render it insolvent and LSA-R.S. 12:93(D) provides the sole remedy for unlawful distributions to a shareholder, because the claims against him were not brought within two years of the purported unlawful distribution, those claims for a finding of liability against the shareholder pursuant to LSA-R.S. 12:93(D) are now lost. Bourg contends that if a redemption renders the corporation insolvent, as prohibited by LSA-R.S. 12:55, and that prohibited redemption is to a shareholder, an action of liability against the shareholder is governed by LSA-R.S. 12:93 and must be asserted against the shareholder within two years of the redemption pursuant to LSA-R.S. 12:93(D).[15]

The relationship between these statutes was explained by this court in Eagle Pacific Insurance Co. v. Production Systems, Inc., 2003-0457 (La. App. 1st Cir. 7/14/04), 887 So. 2d 18, 24, writ denied, 2004-2100 (La. 11/24/04), 888 So. 2d 230,

---

[15]Bourg also contends that OMC has no right to seek a declaratory judgment that the note is a nullity as to payments that have not been made, where this claim has been rendered moot by the bankruptcy proceeding. We note, however, that although Bourg attached OMC's reorganization plan from its Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court as an exhibit in support of his exception of peremption, he did not properly offer and introduce evidence of the bankruptcy proceeding at the hearing. Thus, as previously discussed, we cannot consider it on appeal. See Denoux v. Vessel Management Services, Inc., 983 So. 2d at 88.

citing <u>AMP Service Corporation v. Richard</u>, 419 So. 2d at 914,[16] as follows: With regard to improper redemption, LSA-R.S. 12:55(A) prohibits a corporation from purchasing or redeeming its own shares when it is insolvent, or when the purchase or redemption would render it insolvent. With regard to *shareholder liability*, LSA-R.S. 12:93(D) specifically provides that "[e]very shareholder who receives any unlawful dividend or other unlawful distribution of assets shall be liable to the corporation, or to creditors of the corporation, or to both, in an amount not exceeding the amount so received by him." However, in order to prevail in finding liability against a shareholder under LSA-R.S. 12:93(D), a plaintiff must establish that there was an unlawful distribution of assets and that the unlawful distribution was made to shareholders.

In <u>Security Center Protection Services, Inc. v. All-Pro Security, Inc.</u>, 703 So. 2d at 809, the Fourth Circuit Court of Appeal noted that the triggering mechanism of LSA-R.S. 12:55 is corporate insolvency caused by the purchase or redemption of its own stock and that where a corporation is rendered insolvent by paying to the former shareholder the balance owed for the redemption of his stock, LSA-R.S. 12:93(D) applies. Thus, we find merit to Bourg's contention that any alleged prohibited redemption to him, a shareholder, is governed by LSA-R.S. 12:93(D).

As a fundamental rule of statutory construction, the more specific statute controls over a broader, more general statute. <u>Burge v. State</u>, 2010-2229 (La. 2/11/11), 54 So. 3d 1110, 1113; <u>Jones v. Anderson</u>, 2016-1361 (La. App. 1st Cir. 6/29/17), 224 So. 3d 413, 418. When two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. <u>Louisiana Board of</u>

---

[16]In <u>AMP Service</u>, the Supreme Court explained that "[LSA-]R.S. 12:92(D) and [LSA-]R.S. 12:93(D) impose liability upon participating directors and recipient shareholders in favor of corporate creditors for the unlawful distribution of corporate assets to shareholders." <u>AMP Service Corporation v. Richard</u>, 419 So. 2d at 912.

Ethics v. Purpera, 2020-0801 (La. App. 1st Cir. 2/19/21), 321 So. 3d 401, 405, writ denied sub nom. Louisiana Board of Ethics v. Pupera, 2021-00404 (La. 5/11/21), 315 So. 3d 868.

Louisiana Revised Statute 12:55(A) prohibits a corporation from purchasing or redeeming its corporate shares when the purchase or redemption renders the corporation insolvent. However, LSA-R.S. 12:93(D) specifically provides for the liability of shareholders of a corporation who receive any unlawful dividend or other unlawful distribution of corporate assets and mandates that actions to enforce this liability must be brought within two years from the date on which the unlawful distribution was received. Thus, we conclude that claims asserted for violating LSA-R.S. 12:55 against shareholders, for nullity or otherwise, are governed by the more specific statute pertaining to shareholder liability, namely, LSA-R.S. 12:93(D).

Considering the statutory scheme in its entirety and the applicable jurisprudence interpreting same, we find that the trial court correctly determined that the remedy for OMC's claims for alleged unlawful distributions received by a shareholder in violation of LSA-R.S. 12:55, are set forth in LSA-R.S. 12:93(D). Thus, where OMC's claims were not timely asserted against Bourg herein, they are perempted.

Accordingly, we find no merit to this assignment of error.

## Commencement of Peremptive Period

### (OMC's Assignment of Error No. 1)

In this assignment of error, OMC contends that the trial court erred in determining that the execution of the promissory note triggered the running of peremption as opposed to considering the date of the actual payments themselves, including those not yet made, but owed under the note, which thus have not yet been "received" by Bourg. We disagree.

24

OMC's action of executing the promissory note legally bound it to pay Bourg the full amount of the note, and in turn, as alleged by OMC, the creation of this debt caused or contributed to the company's insolvency. OMC's action of executing the promissory note created a legal and financial responsibility by which it was obligated to repay the full amount of the note to Bourg pursuant to its terms. Thus, the prohibited distribution that triggered OMC's indebtedness to Bourg and gave rise to OMC's claims or cause of action to cancel the note as an unlawful distribution occurred upon execution of the note in favor of Bourg. Stated differently, individual payments made pursuant to the note did not create OMC's indebtedness to Bourg. Upon OMC's execution of the note, Bourg "received" the alleged unlawful distribution and thus commenced the running of the peremptive period of LSA-R.S. 12:93(D).

We likewise find no merit to this assignment of error.

### Evidence of Solvency Pursuant to LSA-R.S. 12:55

### (OMC's Assignment of Error No. 2)

In its final assignment of error, OMC contends that the trial court erred in not considering evidence of OMC's insolvency at the time the redemption agreement and promissory note were entered into. Bourg counters that a judicial determination of solvency is an exercise in futility herein because such analysis was unnecessary and irrelevant to the trial court's judgment maintaining the exception of peremption, where the exception of peremption, by its nature, assumed that OMC was insolvent at the time of the distributions.

We note, however, even if we were to conclude that the trial court erred in failing to consider evidence of OMC's insolvency, OMC failed to introduce any evidence of its purported insolvency at the hearing. Instead, OMC references in brief "the record on appeal herein" and attachments in the record to a "Motion for Summary Judgment filed by Bluehenge" and "incorporated by reference" by OMC

25

in support of its motion for summary judgment. As discussed above, these are not proper evidence in considering a peremptory exception. See Denoux v. Vessel Management Services, Inc., 983 So. 2d at 88; Cyprian v. Tangipahoa Parish School System, 332 So. 3d at 691; and Bank v. Rayford, 247 So. 3d at 736.

Thus, we also find no merit to this assignment of error.

## CONCLUSION

For the above and foregoing reasons, the April 23, 2021 amended judgment of the trial court is reversed to the extent that it sustained the peremptory exception of peremption as to the claims of Bluehenge Capital Secured Debt SBIC, LP against Avis J. Bourg, Jr., for the alleged unlawful distribution of the proceeds pursuant to the mortgage of the L/B KATHRYN EYMARD and to declare the promissory note a nullity.

The April 23, 2021 amended judgment of the trial court is further reversed to the extent that it dismissed with prejudice the claims of Bluehenge Capital Secured Debt SBIC, LP against Avis J. Bourg, Jr., for the alleged unlawful distribution of the proceeds pursuant to the mortgage of the L/B KATHRYN EYMARD and to declare the promissory note a nullity. In all other respects, the judgment is affirmed.

Costs of this appeal are assessed one-third each to appellants, Bluehenge Capital Secured Debt SBIC, LP, and Offshore Marine Contractors, Inc., and appellee, Avis J. Bourg, Jr.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

26