983 So.2d 84 (2008)
Andre J. DENOUX, Kurt Labeaud, Theron J. Washington, David Dickerson, Robert P. Williams, Jr., Richard W. Blackman, Christopher R. Booker, Horace Blanks, III, Derrick A. Matthews, Robert Taylor, Christopher G. Haines and Lorenzo N. Morgan
v.
VESSEL MANAGEMENT SERVICES, INC., Belle of Orleans, LLC, Bally's Louisiana, Inc., d/b/a Bally's Casino Lakeshore Resort, Inc. and Patrick M. Browning.
No. 2007-C-2143.
Supreme Court of Louisiana.
May 21, 2008.
*85 The Koerner Law Firm, Louis Roy Koerner, Jr., R. Brent Cueria, New Orleans, for applicant.
*86 Phelps Dunbar, Barbara L. Arras, New Orleans, James Francis d'Entremont, Baton Rouge; Leake & Anderson, McNeil James Kemmerly, Margaret Frohn Swetman, George Davidson Fagan, New Orleans; Michael Rudolf Delesdernier, Metairie, for respondent.
JOHNSON, Justice.
We granted this writ application to consider whether the lower courts erred in sustaining the exception of prescription filed by defendant, Glidden Company d/b/a ICI Paints ("Glidden"). The court of appeal correctly found that Plaintiffs' claims against Glidden are prescribed, but we vacate the findings of the court of appeal in regard to whether Plaintiffs were Jones Act seaman, whether the Belle of Orleans was a vessel in navigation, and whether admiralty jurisdiction is applicable to the Plaintiffs' claims.

FACTS AND PROCEDURAL HISTORY
The Belle of Orleans, LLC ("Belle") was the owner of the riverboat, M/V Belle of Orleans, and Bally's Louisiana, Inc. ("Bally's") operated the vessel as a riverboat casino. Belle and Bally's contracted with Vessel Management Services, Inc. ("VMS") to provide certain marine management and other services on the M/V Belle of Orleans. VMS was responsible for staffing all marine crew positions aboard the Belle. The workers' duties included performing maintenance and repair work on the vessel as needed. Plaintiffs were employees of VMS who allegedly incurred injuries from exposure to toxic fumes between April and June 2000, while doing chipping and painting work ("Inner Bottom Project") in the bottom interior portion of the hull of the M/V Belle of Orleans.
Plaintiffs filed their initial Petition for Damages against VMS, Bally's and Belle on November 14, 2001. Plaintiffs filed their suit pursuant to the Jones Act, 46 U.S.C. § 688, the "savings to suitors clause," and under the general maritime law. Plaintiffs alleged that they were seamen and members of the crew of the M/V Belle of Orleans. Plaintiffs further alleged that they were exposed to, and injured by, toxic fumes during their work on the Belle, and that they were ordered to do the work of applying primer and paint in the hold and ballast tanks of the M/V Belle, and worked without ventilation or protective equipment.
On March 18, 2002, Belle and Bally's filed a third party demand against Glidden. Belle and Bally's alleged that to the extent that the paint used by the Plaintiffs was unsuitable for its use by VMS, or contained inadequate warnings or instructions for its use, the Plaintiffs' damages were caused by Glidden's fault. Belle and Bally's also sought indemnity or contribution from Glidden to the extent that Glidden's fault caused the Plaintiffs' injuries.
On March 17, 2006, Plaintiffs filed a Fourth Amended Petition, adding Glidden as a defendant. Plaintiffs alleged that Glidden was "the manufacturer of the toxic paint which created the damages sustained by the plaintiffs." Further, Plaintiffs' allegations against Glidden were based solely on Louisiana law, specifically alleging negligence and product liability. Plaintiffs also alleged that Glidden was solidarily liable with Bally's, Belle and VMS.
In response to the Plaintiffs' Fourth Amended Petition, Glidden filed an exception of prescription arguing that Plaintiffs' action was governed by the one-year prescriptive period set forth in La. C.C. art. *87 3492[1] and that Plaintiffs did not timely file suit within one year of their exposure to the fumes (between April and June of 2000). Plaintiffs opposed the exception, arguing that their claims were governed by the three-year prescriptive period applicable to maritime law.[2]
The trial court sustained the exception of prescription, and the court of appeal affirmed. The Plaintiffs then filed the instant writ application in this Court.

DISCUSSION  PRESCRIPTION
In its Exception of Prescription, Glidden argued that all of the Plaintiffs' claims sounded in tort, and were therefore subject to the one-year prescriptive period set forth in La. C.C. art 3492. Glidden noted that Plaintiffs' Fourth Amended Petition specifically alleged that Glidden was liable solely under Louisiana law. Glidden argued that nowhere did Plaintiffs allege a cause of action against Glidden pursuant to federal general maritime law. Glidden argued that because Plaintiffs' Petition was prescribed on its face, Plaintiffs had the burden of proving that prescription had not run on their claim, and that Plaintiffs failed to present any such evidence. Glidden pointed out that Plaintiffs' exposure to the paint fumes began in April of 2000, more than a year before plaintiffs filed their original Petition for Damages in November of 2001. Thus, by the time Plaintiffs filed suit against VMS, Bally's and Belle, prescription on Plaintiffs' claims against Glidden had already run, thereby extinguishing any cause of action Plaintiffs may have had against Glidden. Glidden argues that a timely filed Jones Act/general maritime tort claim against VMS, Bally's and Belle cannot revive the already prescribed action on the claims against Glidden.
The Plaintiffs opposed the Exception of Prescription, arguing that the causes of action against Glidden were maritime in nature and governed by the uniform three-year statute of limitations established by 46 App. U.S.C. § 763a.[3] Plaintiffs argued that their damages were sustained entirely aboard the Belle of Orleans by seaman-employees of VMS. Plaintiffs argued that the causes of action against VMS, Bally's and Glidden arose at a maritime location and in a maritime context, and thus 46 U.S.C.App. § 763a applies.
In response, Glidden argued that Plaintiffs failed to satisfy their burden of proving that their claims were not prescribed. Glidden has also pointed out that the deposition testimony relied on by the Plaintiffs to oppose the exception of prescription was never introduced into evidence, but merely *88 attached to the Plaintiffs' opposition memorandum. Plaintiffs have admitted that they did not introduce the depositions into evidence, but argue that all parties and the court of appeal treated the depositions as if they had be introduced. Thus, Plaintiffs suggest that defendants have essentially waived this argument.
A review of Plaintiffs' Fourth Amended Petition reveals that the claims asserted against Glidden were made solely pursuant to Louisiana law. Delictual actions under Louisiana law generally prescribe within one year of the date the injuries or damage was sustained. La. C.C. art. 3492. Plaintiffs alleged that they were injured from exposure to toxic fumes from April to June of 2000. Jurisprudence provides that a cause of action resulting from exposure to fumes accrues upon exposure and the manifestation of initial symptoms.[4] Thus, Plaintiffs' suit against Glidden, which was not filed until March of 2006 (almost six years after the initial exposure) is clearly prescribed on its face. While, ordinarily, the burden of proof is on the party pleading prescription, when the plaintiff's petition has clearly prescribed on its face, as here, the burden shifts to the plaintiff to prove that the claim has not prescribed. Rizer v. American Surety and Fidelity Ins. Co., 95-1200 (La.3/8/96), 669 So.2d 387; Lima v. Schmidt, 595 So.2d 624, 628 (La.1992). Thus, Plaintiffs were required to prove that their claims against Glidden had not prescribed.
Plaintiffs argue that their claims against Glidden fall under maritime law, and thus are subject to a three-year prescriptive period, rather than the one-year state tort period. The issue is whether Plaintiffs met their burden of proving that their claims against Glidden fell within federal admiralty jurisdiction.
Upon our review of the record in the instant case, we determined that the Plaintiffs failed to formally admit any evidence in opposition to the exception of prescription. The depositions contained in the record, and relied upon by the lower courts, were never entered into evidence. At the trial of a peremptory exception of prescription, "evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. C.C.P. art. 931. In the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, which are accepted as true. Cichirillo v. Avondale Industries, Inc., 2004-2894 (La.11/29/05), 917 So.2d 424, citing Waguespack v. Judge, 04-0137 (La.App. 5th Cir.6/29/04), 877 So.2d 1090.
Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal. See: Ray Brandt Nissan v. Gurvich, 98-634 (La.App. 5th Cir.1/26/99), 726 So.2d 474; Gulf Coast Bank and Trust Co. v. Eckert, 95-156 (La.App. 5th Cir.5/30/95), 656 So.2d 1081; City of Eunice v. CLM Equipment Co., Inc., 505 So.2d 976, 978 (La.App. 3rd Cir.1987); Norton v. Thorne, 446 So.2d 972, 974 (La.App. 3rd Cir.1984); Wilkin-Hale State Bank v. Tucker, 148 La. 980, 88 So. 239 (1921).
Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence. La. C. Civ. P. art. 2164; Gallagher v. Gallagher, 248 La. 621, 181 So.2d 47 (1965); Bullock v. Commercial U. Ins. Co., 397 So.2d 13 (La.App. 3rd Cir.1981); *89 Holmes v. St. Charles General Hosp., 465 So.2d 117 (La.App. 4th Cir.1985); B.W.S., Jr. v. Livingston Parish School Board, 02-1981, p. 2 (La.8/16/06), 936 So.2d 181, 182 (per curiam). None of the depositions relied on by the Plaintiffs were properly before the trial court at the time of the hearing, nor were they properly part of the record on appeal. Thus, based on the content of the record before us, we must conclude that Plaintiffs failed to meet their burden of proof in this matter. As this Court noted in Cichirillo, "[f]ailure to adequately prepare the record by neglecting to offer matters into evidence can alter the outcome of a case, especially in an exception of prescription where the burden of proof may shift between the parties." Cichirillo, 917 So.2d at 428, n. 7.
We also note that although Plaintiffs alleged that Glidden was jointly and solidarily liable with the original defendants, VMS, Bally's and Belle, Plaintiffs cannot rely on their allegation of solidary liability against the other defendants when their petition against these other defendants was not filed within one year. While Plaintiffs' cause of action accrued in April of 2000, Plaintiffs did not file their original petition for damages until November of 2001  more than a year after the acts which gave rise to their injuries took place. Delictual actions are subject to the liberative prescription of one year. La. C.C. art. 3492. Civilian prescriptive periods act to extinguish the civil obligation to which they apply. Louisiana Health Service and Indemnity Company v. McNamara, 561 So.2d 712 (La.1990). Once a cause of action is extinguished by prescription, a subsequent timely suit against alleged solidary obligors will not revive the prescribed action. Rizer, 669 So.2d at 390-391; Whitnell v. Menville, 540 So.2d 304 (La. 1989). Plaintiffs injuries occurred between April and June, 2000. There was no action interrupting or suspending the prescriptive period filed prior to November of 2001. Therefore, the Plaintiffs' petition against the other three defendants will not revive the prescribed tort action against Glidden.
For these reasons, we find that the trial court properly sustained the exception of prescription.

JONES ACT / MARITIME CLAIMS
In sustaining the exception of prescription, the trial court found that the Plaintiffs' cause of action against Glidden rested in Louisiana products liability law, and thus a one-year statute of limitations applied. In affirming the decision of the trial court, the court of appeal agreed that the Plaintiffs' claims against Glidden were governed by Louisiana law.
Rather than limiting its ruling to the narrow issue before it, the court of appeal overreached and went on to summarily hold that these plaintiffs were not Jones Act seamen, the craft on which they served was not a vessel, and their claims against the defendants did not fall within the admiralty jurisdictioneffectively dismissing the Plaintiffs' entire action against all remaining defendants, Belle, Bally's and VMS. Not only were these issues not directly before the court, but, based on the record before the court of appeal, there was no evidence upon which the court of appeal could properly make these findings. Thus we vacate the ruling on these issues.

DECREE
For the foregoing reasons, we affirm that portion of the court of appeal's judgment affirming the judgment of the trial court which sustained the exception of prescription by Glidden Company, d/b/a ICI Paints. We vacate the portions of the court of appeal's judgment finding that Plaintiffs are not Jones Act seaman, that *90 the Belle of Orleans was not a vessel in navigation, and that none of the Plaintiffs' claims fall within the admiralty jurisdiction.
AFFIRMED IN PART, VACATED IN PART.
CALOGERO, Chief Justice, concurs and assigns reasons.
JOHNSON, Justice, additionally concurs and assigns reasons.
CALOGERO, Chief Justice, concurring and assigning reasons.
The majority twice mentions that Plaintiffs' allegations were "based solely on Louisiana law." Majority opinion at pp. 86 & 88. I write separately to emphasize that I would not find Plaintiffs' failure to explicitly state in their petition that their claim against Glidden Company d/b/a ICI Paints ("Glidden") was founded in "maritime products liability," nor their statements that Glidden's actions gave rise to a claim under Louisiana law, as precluding our determination that Plaintiffs have stated a cause of action in maritime products liability.
It has long been understood that Louisiana has adopted a "fact pleading" system; thus,
[a]s long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the "theory of the case" doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, has been abolished.
First S. Prod. Credit Ass'n v. Georgia-Pacific, 585 So.2d 545, 548 (La.1991) (citations omitted). Here, although Plaintiffs specifically alleged in their fourth amended petition that Glidden is liable under "Louisiana law" for producing a paint that was "unreasonably dangerous" in construction, design, warning, and conformance with an express warranty, Plaintiffs' recovery is not limited to Louisiana products liability if the Plaintiffs have pled facts necessary for a court to recognize a cause of action under maritime products liability law.[1]
In their fourth amended petition, it is alleged that defendant Bally's Louisiana, Inc. ("Bally's") contracted with Vessel Management Services ("VMS"), Plaintiffs' employer, to provide "certain marine management and other services" aboard the riverboat casino M/V BELLE OF ORLEANS (paragraph 24); that Plaintiffs were required to remove rust and repaint the inner hull of the BELLE OF ORLEANS as part of their employment (paragraph 25); that Glidden manufactured the paint used during this process (paragraph 22); that the master of the BELLE as well as Plaintiffs themselves were assured by a Glidden representative that the personal respirators utilized by the Plaintiffs were sufficient to protect the Plaintiffs from any paint fumes (paragraphs 26 & 27); and finally, "[t]o the extent that the Devflex 4206/4208 paint was unsuitable in its use by VMS or contained inadequate warnings or instructions for its use, Glidden was equally at fault with VMS and Bally's for any damage, loss, or injury that was caused in whole or in party by Glidden's acts, errors[,] conduct, fault, negligence[,] and/or omissions, *91 and is therefore liable jointly, severally, and in solido with VMS and Bally's." (paragraph 31). From this, it is clear to me that the Plaintiffs have pled that they were the crew of the M/V BELLE OF ORLEANS, were injured by toxic fumes from Glidden's product as they serviced the ship's hull, and these acts occurred in the course and scope of their employment. Furthermore, Plaintiffs have stated that Glidden's product was either unsuitable to be used in this manner or contained inadequate warnings or instructions. Although courts have struggled with the question of when a products liability claim falls within the maritime jurisdiction, see 1 Robert Force & Martin J. Norris, The Law of Maritime Personal Injuries § 1:15 at 1-35 (5th ed.2004), I would hold that where a seaman has been injured by a product while doing the ship's work, especially when that work involves maintenance to the vessel itself, the claim is within the maritime jurisdiction, accord id. at 1-36 ("the better approach is that just as maritime law should protect maritime commerce and navigation, maritime actors such as seamen also should have the protection of maritime law. It is submitted that the maritime nexus requirement should be satisfied if either the plaintiff or defendant is a traditional maritime actor.").
This discussion merely brings me to the conclusion that Plaintiffs have stated a cause of action in maritime products liability, and thus the three year statute of limitations was potentially available to the Plaintiffs. However, when Glidden raised its exception of prescription, Plaintiffs had the burden to prove that their claim was not prescribed, as their claim was prescribed on its face under both Louisiana and maritime law. See Rizer v. Am. Surety & Fidelity Ins. Co., 95-1200 (La.3/8/96), 669 So.2d 387. In addition to this, because the burden to prove one's claim is within the maritime jurisdiction falls upon the one invoking it, see Sound Marine & Mach. Corp. v. Westchester County, 100 F.2d 360, 361 (2d Cir.1939), the burden was similarly upon the Plaintiffs to prove that their claim fell within the maritime jurisdiction.
As the majority has properly noted, Plaintiffs have simply failed to enter into evidence facts that would bring this claim within the maritime jurisdiction. The depositions relied on by the Plaintiffs were merely attached to the Plaintiffs' memorandum in opposition to the exception of prescription, not formally introduced into evidence. Thus, there was no evidence to prove that Plaintiffs' claim against Glidden was a maritime products liability claim. Therefore, even though Plaintiffs have stated a cause of action in maritime products liability, the Plaintiffs did not sustain their burden and the majority was correct to hold that Louisiana products liability law governs in this instance.
Furthermore, even if it were shown that the products liability claim against Glidden was a maritime claim, it is not clear how that would have prevented the claim from being time-barred. Plaintiffs' cause of action accrued between April and June of 2000. The Plaintiffs did not sue Glidden until March of 2006, nearly six years after the statute of limitations would have begun to run. As discussed, this claim would have been prescribed regardless of whether the one-year Louisiana prescriptive period or the three-year maritime statute of limitations applied.
Additionally, there are no devices available to these Plaintiffs that would allow them to suspend or interrupt prescription, toll the statute of limitations, or otherwise relate back to the time of the filing of the original petition.
This court has previously recognized that our Louisiana rule that allows for the *92 interruption of prescription against a solidary obligor when another solidary obligor has been timely sued, see LSA-C.C. art. 3503, does not apply in the maritime context. See Prejean, 98-0948, p. 5, 721 So.2d at 1276 (citing Davis v. Newpark Shipbuilding & Repair, Inc., 659 F.Supp. 155 (E.D.Tex.1987)). Therefore, the fact that Glidden and the other defendants may be joint and several tortfeasors (the maritime analogue to our state's solidary obligors), and suit was timely filed against the other defendants, would have no effect on the claim against Glidden. See 1 Thomas J. Schoenbaum, Admiralty & The General Maritime Law § 5-15(4th ed. 2004) ("As a general rule, the statute of limitations will continue to run against a tortfeasor until she is made a party to the suit.").
Similarly, the rule that allows a plaintiff to relate amendments in his petition back to the date of the original petition, see LSA-C.C.P. art. 1153, does not apply when the amendment adds a completely new defendant. In Ray v. Alexander Mall, this court enunciated a four-prong test to determine when an amendment which changes the identity of the parties sued may relate back to the date of filing of the original petition:
(1) The amended claim must arise out of the same transaction or occurrence set forth in the original pleading;
(2) The purported substitute defendant must have received notice of the institution of the action such that he will not be prejudiced in maintaining a defense on the merits;
(3) The purported substitute defendant must know or should have known that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him;

(4) The purported substitute defendant must not be a wholly new or unrelated defendant, since this would be tantamount to assertion of a new cause of action which would have otherwise prescribed.

434 So.2d 1083, 1086-87 (La.1983) (emphasis added). The third and fourth prongs of this test weigh against allowing Plaintiffs to relate back: There appears to be no mistake concerning the identity of Glidden that prevented the Plaintiffs from suing it within three years (especially considering the fact that the Defendants brought a third-party demand against Glidden in March of 2002), and Glidden is a wholly new defendant. Therefore, there is no excuse for the Plaintiffs' delay in suing Glidden and the exception of prescription should stand.
Finally, with regards to the claims against the remaining Defendants, it is crucial to note that none of this is to say that these Plaintiffs are not seamen, nor was the BELLE OF ORLEANS not a vessel in navigation at the time of this incident, nor would their claims fall outside the maritime tort jurisdiction; but simply that the record before us does not support these conclusions. Thus, it was similarly correct for the majority to vacate the court of appeal's findings regarding these issues. Plaintiffs have timely sued the remaining Defendants; therefore, they must be allowed to adduce evidence at trial to show they satisfy the requisites of their claims, if they can.
JOHNSON, Justice, additionally concurring and assigning reasons.
I find it necessary to additionally concur because the court of appeal erred in its analysis of the Jones Act, vessel status and maritime law issues in this case.
The Jones Act provides a cause of action against a plaintiff's employer grounded *93 upon negligence. 46 U.S.C. § 30104[1]; Becker v. Tidewater, Inc., 335 F.3d 376, 386 (5th Cir.2003). To maintain a cause of action under the Jones Act, the plaintiff must be a "seaman." Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); Hufnagel v. Omega Serv. Indus., Inc., 182 F.3d 340, 346 (5th Cir.1999). The United States Supreme Court has articulated a two-part test for determining seaman status. First, Plaintiff's duties must contribute to the function of the vessel or to the accomplishment of its mission. Chandris, supra. Second, Plaintiff must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in duration and nature. Id.
The Supreme Court observed that satisfying the first prong of the test is relatively easy: the claimant need only show that he "do[es] the ship's work." Chandris, 515 U.S. at 368, 115 S.Ct. 2172. Regarding the second prong, "[t]he requirement of a substantial connection to a vessel is intended `to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation.'" Id.
The Supreme Court noted that the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon. The duration of the worker's connection to a vessel and the nature of the worker's activities taken together, determine whether a maritime employee is a seaman, because the ultimate inquiry is whether the worker in question is a member of the vessel's crew who furthers the mission or function of the vessel, or whether the worker is simply a land-based employee who happens to be working on the vessel at a given time. Chandris, 515 U.S. at 370, 115 S.Ct. 2172. This second element represents a "status based" standard; accordingly, "it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to a vessel." Id. at 364, 115 S.Ct. 2172.
In Stewart v. Dutra Construction Co., 543 U.S. 481, 497, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), the United States Supreme Court held that a vessel "is any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." With respect to the requirement that a vessel be "in navigation," the Court clarified that the requirement was meant to show only that structures could lose their vessel status if they are withdrawn from the water for extended periods. Id. at 496, 125 S.Ct. 1118. The "in navigation" requirement "is relevant to whether the craft is `used, or capable of being used' for maritime transportation." Id. But "[t]he question remains in all cases whether the watercraft's use `as a means of transportation on water' is a practical possibility or merely a theoretical one." Id.
The court of appeal relied on depositions not properly admitted into evidence, and argument by counsel, and reasoned that Plaintiffs "were not exposed to the perils of the sea, nor did their primary obligations aboard the Belle of Orleans take them to sea." The court of appeal applied the wrong test and erred when it decided the issue of seaman status based solely on whether the Plaintiffs "went to sea" or were exposed to the "perils of the sea." See: In re Endeavor Marine Inc., 234 F.3d 287 (5th Cir.2000), in which the United States Fifth Circuit reversed the Eastern *94 District of Louisiana when it "surmised that the `linchpin' of the substantial connection test is whether the claimant's duties carry him to sea." 234 F.3d 287, 289-90 (5th Cir.2000) (per curiam). The Fifth Circuit held that while the "`going to sea' test has an intuitive appeal, . . . we do not believe that the Supreme Court intended to create such a singular rule for determining seaman status." Id. at 291. Rather, it believed that the phrase was (a) only meant to "help" in determining whether the requisite connection to a vessel existed and (b) was a shorthand way of saying that the employee's connection to the vessel exposes him to the perils of the sea. Id.
The court of appeal also concluded that the Belle of Orleans was not a vessel. The court reasoned that the Belle of Orleans was a floating casino on which the crew members were employed to maintain the boat in its capacity as a casino, not as a vessel in navigation. The court relied on Davis v. Players Lake Charles Riverboat, Inc., 74 F.Supp.2d 675, (W.D.La.1999), where the Western District Court of Louisiana found that the Players Riverboat Casino was not a vessel under the Jones Act, and Board of Com'rs of Orleans Levee Dist. v. M/V BELLE OF ORLEANS, 439 F.Supp.2d 1178, 1194, (S.D.Ala.2006), which found that the Belle of Orleans was not a vessel.
However, these cases are not analogous to the one at bar. Davis was decided before the United States Supreme Court's 2005 Stewart decision, and utilized the now-defunct "purpose" test commonly employed in the federal Fifth Circuit to gauge vessel status. Therefore, the law applied by the Davis court, and thus its holding, has been abrogated by Stewart. Board of Commissioners of the Orleans Levee District v. M/V Belle of Orleans did not involve a casino boat that sailed daily as the M/V Belle of Orleans apparently did in the instant matter, but instead involved a craft that became permanently moored to the shore and thus was effectively taken out of navigation.[2]
Plaintiffs have argued that they were injured during the "excursion regime," a time when State law required riverboat casinos to sail. Furthermore, Plaintiffs argue that the M/V Belle of Orleans sailed into Lake Pontchartrain every 1 ½ to 2 hours, unless weather conditions prohibited sailing. Under the facts argued by the Plaintiffs, the M/V Belle of Orleans would be considered a "vessel in navigation" under Stewart, since it was not only "capable of maritime transportation," but actually conducted maritime transportation in the practical sense. See also: Quinn v. St. Charles Gaming Co., 01-0794, p. 3 (La. App. 3rd Cir.2/6/02), 815 So.2d 963, 966 which held that two riverboat casinos were vessels "since, at the time of this incident, they were required by law to conduct gambling operations during excursions onto the Calcasieu River and Lake Charles."
Furthermore, I am of the opinion that the court of appeal erred in ruling that admiralty jurisdiction was not applicable to any of the Plaintiffs' claims. In Jerome B. Grubart, Inc. v. Great Lakes Dredge & *95 Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024, the United States Supreme Court held that:
[A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has a "potentially disruptive impact on maritime commerce. Second a court must determine whether the general character" of the "activity giving rise to the incident shows a substantial relationship to traditional maritime activity".
513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).
The court of appeal erred in making a determination that Plaintiffs' claims are not governed by maritime law. The court of appeal determined that the Plaintiffs were injured when the Belle of Orleans was moored to the shore and that the boat did not cruise while they worked on the "Inner Bottom Project." The court of appeal went on to find that the Plaintiffs' injuries neither disrupted maritime commerce, nor was there a substantial relationship between the painting and chipping of the casino and traditional maritime activity. However, if Plaintiffs are found to be Jones Act seamen, the fact that they were injured in the course of their employment would likely bring this case within admiralty jurisdiction. See: Weaver v. Hollywood Casino-Aurora, Inc., 255 F.3d 379, 386 (7th Cir.2001); Tagliere v. Harrah's Ill. Corp., 445 F.3d 1012, 1014 (7th Cir.2006).
NOTES
[1] La. C.C. 3492 provides:

Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.
[2] After Glidden filed its Exception of Prescription, Plaintiffs attempted to file a Fifth Amended Petition to add a paragraph stating maritime tort claims against Glidden. However, the order allowing this Petition to be filed was never signed by the trial court. Further, Plaintiffs attempted to file a Sixth Amended Petition adding a claim against Glidden pursuant to the Admiralty Extension Act, but the trial court denied the Plaintiffs leave to file this Petition.
[3] 46 App. U.S.C.A. § 763a provides: "Except as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." As of October 6, 2006, 46 App. U.S.C.A. § 763a is now cited as 46 U.S.C.A. § 30106.
[4] See: Clay v. Union Carbide Corp., 828 F.2d 1103 (5th Cir.1987).
[1] I note that when a state court hears a maritime claim, the court must apply substantive federal maritime law under what courts have called the "reverse-Erie" doctrine. Lejano v. Bandak, 97-0388 (La. 12/12/97), 705 So.2d 158, 162-63 (citing Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-23, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986)). Because the rules that govern pleadings are procedural rules, not substantive law, it is proper for us to apply Louisiana's "fact pleading" rules here.
[1] Prior to October 6, 2006, the proper cite was 46 U.S.C. app. § 688.
[2] While this case involved the same vessel, the circumstances of the cases differ and necessitate a different outcome. In Board of Com'rs of Orleans Levee Dist., the Court noted that from April 1, 2001 until Hurricane Katrina on August 29, 2005, the M/V Belle of Orleans was permanently moored to the dock in the South Shore Harbor Marina with steel cables. Since April of 2001, the BELLE OF ORLEANS has not been used as a means of transportation or in navigation and its Coast Guard Certificate of Inspection reflects a "permanently moored" status. The vessel was at all times stationary and did not engage in maritime commerce or transport passengers on the open waters so that they could gamble. Board of Com'rs of Orleans Levee Dist., 439 F.Supp.2d at 1196-1198.