NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2025 CA 0345

FELIPE ARMENDARIZ MOLINA AND AUSY OSEGUERA

VERSUS

KIMBERLY SHARELLE CAGE AND WILLIE WILLIAMS, JR.

*Judgment Rendered:* DEC 1 1 2025

* * * * * * * *

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C677224, Section 27

The Honorable Tiffany Foxworth-Roberts, Judge Presiding

* * * * * * * *

| | |
|---|---|
| Roshell Jones<br>New Iberia, Louisiana<br>and<br>Marcus A. Allen, Sr.<br>Lafayette, Louisiana | Counsel for Defendants/Appellants<br>Kimberly Sharell Cage and<br>Willie Williams, Jr. |
| James S. Vilas<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellees<br>Felipe Armendariz Molina and<br>Ausy Oseguera |

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND BALFOUR, JJ.

**THERIOT, J.**

This appeal arises from a judgment in favor of the plaintiffs in a suit involving a purported "lease purchase" agreement. For the reasons set forth herein, we dismiss the appeal in part, reverse, and render.

## FACTS AND PROCEDURAL HISTORY

Kimberly Cage and her husband, Willie Williams, Jr. (collectively referred to as the "Sellers") are the owners of a house located at 5813 Linden Street in Baton Rouge, Louisiana, which is mortgaged to Vanderbilt Mortgage Company. Although the Sellers resided in the Linden Street house at one time, they have lived elsewhere in Baton Rouge since approximately 2010 or 2011, and the Linden Street house became an investment (rental) property for the Sellers.

In August of 2016, the Linden Street house was vacant and had been listed for sale with a realtor by the Sellers when it sustained extensive flood damage in the catastrophic flooding that impacted Baton Rouge. The Sellers attempted to make an insurance claim for the flood damage to the Linden Street house, but their claim was denied. The Sellers applied for and received $20,000.00 from FEMA to repair the flood damage after the insurance denial, but this was insufficient to fully repair the house. The Sellers were already behind on their mortgage payments on the Linden Street house before the flood, and after the flood, they stopped making their mortgage payments altogether.

Cage initially met Felipe Armendariz Molina in 2016 when he was working for a contractor who was doing repair work on the Sellers' Baton Rouge residence. Following the flood, Cage told Molina about the flood damage at the Linden Street house and the fact that she did not have enough money to fully repair the house, and Cage and Molina began to discuss the idea of Molina purchasing the house. Cage contacted Vanderbilt Mortgage to inquire about the current mortgage balance on the Linden Street house and the possibility of a short sale, given the diminished

2

value of the property as a result of the flood damage. After being told that a short sale was a possibility, but without receiving approval from Vanderbilt Mortgage, Cage then negotiated a purchase price for the house with Molina that she thought Vanderbilt Mortgage would accept in a short sale.

Based on their negotiations, Cage prepared a Louisiana Residential Agreement to Buy or Sell ("Agreement") and a Lease Purchase Addendum to the Agreement ("Addendum") using forms she found online. Molina and his wife, Ausy Oseguera (collectively referred to as the "Buyers"), and the Sellers executed the Agreement and Addendum before a notary on November 8, 2016.[1] The Agreement listed the purchase price for the Linden Street house as $60,000.00, and called for an act of sale to be executed by the parties on or before November 4, 2016. However, the Agreement further provided that the sale was to be a "lease purchase" with a non-refundable $10,000.00 lease purchase fee, $7,000.00 of which would be paid in cash by the Buyers and $3,000.00 of which would be credited for repairs to the property performed by the Buyers, and that the Addendum would be made part of the Agreement.

The Addendum contained the following additional provisions:

i. Buyer agrees to renew and keep up with current termite that has been in place since sellers purchased [the] home.

ii. Buyer to pay home insurance of [$]88.00 monthly which is included in monthly payment.

iii. In the events the homeowners insurance or property taxes increase during the term of this contract seller reserves the right to increase the buyers [sic] monthly notes to reflect this change with a *30 day written notice sent to buyer. Buyer reserves the right to request* proof of increase of these items from seller. (FYI-2009 *taxes did not have homestead exemption in effect so the biggest hike has already taken place.*)

iv. Line 60 [of the Agreement] to read sale to be a lease purchase with [a] Non Refundale [sic] lease purchase fee of $7000.00, which it is acknowledged that under no circumstance, and for

---

[1] The Agreement was dated November 4, 2016; however, it is undisputed that the Agreement was not executed until November 8, 2016.

any reason of default by buyer, including, but not limited to obtaining a loan denial, that upon commencement, the $7000.00 Lease purchased [sic] fee and any other monies paid or cost of improvements to property is non refundale [sic] and non applicable[.]

v.   Buyer acknowledges that seller has no interest in extending this contract beyond Nov 4, 2018[.]

vi.   [P]urchaser will have complete control over property after signing of lease[.]

vii.   -lease terms
-Buyer to pay [$]1000.00 a month starting at the commencement of lease, buyer will receive [sic]

viii.   Payments to be made payable to <u>Kimberly Cage</u>[.]

ix.   Payments to be mailed or dropped off to : Kimberly Cage
*10814 Ericson Ave Baton Rouge LA, 70816*

The Buyers paid the Sellers $7,000.00 cash for the lease purchase fee, and Molina began working to repair the flood damage and remodel the house immediately after the Agreement and Addendum were executed. Although Cage provided some of the supplies for Molina to use to repair the flood damage, such as insulation and drywall, Molina purchased additional construction materials and supplies himself and hired a contractor to perform some of the work.

While the Buyers were living in and working on the Linden Street house and making the $1,000.00 monthly lease payments to Cage with the intention of purchasing the house pursuant to the Agreement and Addendum, Molina discovered that the Linden Street house was listed for sale with a realtor. Upon further investigation, Molina learned that Cage had not been making the mortgage payments on the property when due, resulting in the accrual of late fees and penalties and subjecting the property to possible foreclosure. Thereafter, the Buyers stopped making the monthly lease payments to Cage as required by the Addendum and began making payments directly to the mortgage company.

4

On December 12, 2018, the Buyers filed suit against the Sellers, asserting claims for breach of contract and fraud and seeking specific performance and damages. The Buyers alleged that although the Sellers had agreed to sell the property to them for $60,000.00, the Sellers knew that the balance of the mortgage on the property was approximately $78,000.00 at that time and had no intention of paying the difference between the sale price and the mortgage balance in order to provide clear and merchantable title, free of encumbrances, to the Buyers. The Buyers further alleged that they notified the Sellers that they had funding available to purchase the property and pay off the current mortgage, but the Sellers refused to provide them with a payoff amount from Vanderbilt Mortgage or execute an act of transfer so that the Buyers could acquire the Sellers' title and interest in the property prior to the deadline set forth in the Agreement and Addendum. The Buyers alleged that they incurred damages as a result of the Sellers' misrepresentation, and sought judgment ordering the Sellers to pay all amounts due above the $60,000.00 purchase price, to transfer their rights, title, and interest in the property to the Buyers, and to pay the Buyers' attorney fees, costs, expenses, as well as for all other general and equitable relief to which the Buyers may be entitled. The Buyers attached a number of exhibits to their petition, including: the November 8, 2016 Agreement and Addendum; an itemized proposal from a contractor for repair and remodeling work on the house totaling $83,265.00, which was signed and accepted by Molina on November 20, 2016; and several receipts for funds sent by Molina to Vanderbilt Mortgage in 2018 via MoneyGram Payment Systems, Inc.

Cage[2] filed a pro se answer, denying that the Sellers breached their contract with the Buyers. Cage alleged that the Buyers were aware that the house was

---

[2] No answer was filed by Williams, and since Cage is not an attorney, she is not authorized to file an answer on his behalf. See La. R.S. 37:212; *Louka v. Board of Supervisors for University of Louisiana System*, 2023-0076, p. 5 (La.App. 1 Cir. 9/21/23), 376 So.3d 864, 867, *writ denied*, 2023-01410 (La. 1/10/24), 376 So.3d 131. However, the

"going thru [sic] a short sale" and that "the time frame was limited," but the Buyers failed to secure the necessary funding to purchase the house before the November 4, 2018 deadline set forth in the Addendum. Cage further alleged that the Buyers breached the Agreement and Addendum by making lease payments directly to Vanderbilt Mortgage. Finally, Cage denied that the Buyers were entitled to reimbursement under the terms of the Agreement and Addendum of the $7,000.00 lease purchase fee or for any unauthorized repairs they made to the house.

The Sellers objected to certain discovery requests from the Buyers. Specifically, they objected to discovery requests concerning: the balance due on the mortgage at the time the Agreement and Addendum were executed, whether the Sellers made all mortgage payments when due, and the current payoff amount on the mortgage. The Buyers filed a motion to compel, and on January 29, 2020, the trial court ordered the Sellers to fully and completely respond to the Buyers' outstanding discovery requests and to reimburse the Buyers' filing fees in connection with the motion to compel and pay the Buyers' attorney fees in the amount of $250.00. The trial court further noted that in the event the Sellers failed to completely and adequately respond to the Buyers' discovery requests, the trial court would consider taxing the Sellers with the costs of deposing Vanderbilt Mortgage in order to obtain this information.[3]

The Sellers did not comply with the trial court's January 29, 2020 order to comply with discovery and pay the Buyers' costs and attorney fees, and on September 28, 2020, the Buyers filed a motion for contempt and for sanctions, as well as for an award of costs and attorney fees. Following a hearing on October

---

lack of an answer filed by Williams is inconsequential, since he was present and represented by counsel at trial. See *Micelli v. Moore*, 499 So. 2d 1298, 1299 (La. Ct. App. 1986) ("A defendant is not required to answer when a plaintiff foregoes his right to a default judgment and proceeds to trial on the merits."); see also *Gisclair v. Cajun Trucking, Inc.*, 421 So.2d 339, 340 n.1 (La.App. 1 Cir. 1982) ("It is well settled that the right to object to the failure to file an answer is waived if the parties proceed to trial without objection.").

[3] The Sellers filed a notice of intent to apply for supervisory writs on February 28, 2020; however, no writ application was ever filed by the Sellers.

26, 2020, the trial court granted the Buyers' motion, finding the Sellers to be in contempt of court, ordering them to comply with the judgment compelling discovery responses and to pay the Buyers' filing fees and attorney fees of $250.00, and further ordering the Sellers to reimburse all of the Buyers' costs related to the recent filings, including filing fees of $297.00, attorney fees of $500.00, and an additional fee of $80.00 for the filing of the judgment on the motion for contempt and for sanctions, within thirty days of the October 30, 2020 judgment.

On August 10, 2021, the Buyers filed another motion for contempt, alleging that the Sellers had made an initial, partial payment of $350.00 on December 16, 2020 towards the amounts owed to the Buyers pursuant to the October 30, 2020 judgment, but they had not made any other payments thereafter. The hearing on this motion for contempt, which was combined with a motion for summary judgment, was delayed for some time due to the unavailability of Spanish interpreters. A hearing was eventually held on the Buyers' motions on January 13, 2022, following which the trial court denied the motion for summary judgment and declined to hold the Sellers in contempt, but ordered the Sellers to pay off the remainder of the amounts owed to Buyers for the prior contempt, along with court costs for filing the August 10, 2021 motion for contempt and judicial interest from the date of the initial order.

On August 10, 2023, the Buyers filed a motion for a status conference and another motion for contempt, noting that they still had not received the certified mortgage documents subpoenaed on January 17, 2023 (the same mortgage documents the Sellers were previously ordered by the trial court to produce in response to discovery requests), nor had the balance of the court costs taxed by previous judgments ($777.00, plus judicial interest) been paid by the Sellers. The trial court issued a case management schedule on October 4, 2023, setting

7

discovery cutoffs for October 27, 2023, and setting the matter for a settlement conference on January 8, 2024 and for a bench trial on February 29, 2024.

The Buyers filed another motion for contempt after the Sellers' counsel failed to comply with the trial court's scheduling order to exchange pretrial inserts and exhibit books, to participate in the pre-trial conference, and to appear at the settlement conference. The Buyers also alleged that the balance of the costs awarded in the October 30, 2020 judgment ($777.00, plus judicial interest) remained unpaid and the subpoenaed mortgage documents had not been produced. The trial court ordered the Sellers to produce the subpoenaed mortgage documents no later than January 30, 2024,[4] including but not limited to the initial amount of the mortgage, the exact amount of the mortgage on November 8, 2016, and all records of payments, missed payments, late fees, and notices of foreclosure, from November 8, 2016 through the current date. The trial court further ordered that the mortgage loan documents did not have to be certified and would be deemed sufficient for introduction into the record as to their accuracy and authenticity without certification. In addition, the Sellers were ordered to pay all of the Buyers' costs incurred in filing the motion.

A bench trial was held on May 2 and 3, 2024. Cage was the only witness who testified at the trial. By stipulation of the parties, Molina's deposition, taken by counsel for the Sellers on September 24, 2021 using a Spanish-English interpreter, was admitted into evidence in lieu of his testimony at trial.[5]

At the trial, Cage testified that she had attempted to talk to Vanderbilt Mortgage following the flood about her inability to make the mortgage payments,

---

[4] Although the trial court judgment ordered the Sellers to produce the documents no later than January 30, 2024, the judgment was not signed until March 18, 2024.

[5] Following the joint stipulation of the parties regarding the use of Molina's deposition, the trial court noted that the parties did not have a certified copy of Molina's deposition at that time. The trial court asked the parties to circulate a digital copy of the deposition and then supplement the record with a certified copy later. At the conclusion of the trial, the trial court asked the minute clerk whether all the exhibits had been supplemented, and she replied, "I believe so. I believe so." Nevertheless, the deposition of Molina included in the appellate court record is not a certified copy.

but the company continued to demand payment without regard for the circumstances or the condition of the property. After Molina expressed interest in purchasing the severely flood-damaged house, Cage and Molina contacted Vanderbilt Mortgage on October 24, 2016 to see whether the company would agree to a short sale. According to Cage, a Vanderbilt Mortgage representative told her that the company "would take a smaller offer" if it was close to the mortgage loan balance. She testified that she asked about the mortgage balance at that time, and she thinks it was $72,000.00. She further testified that she believed that the Linden Street house was a total loss or worth very little as a result of the flood damage. After this conversation with the Vanderbilt Mortgage representative, Cage and Molina negotiated a purchase price of $60,000.00 for the Linden Street house, which Cage testified was based on their belief that Vanderbilt Mortgage would "probably" agree to a short sale for that amount given the condition of the property. However, Cage admitted at trial that Vanderbilt Mortgage never explicitly agreed to accept anything less than the full amount due on the mortgage.

Although Cage testified that she does not speak Spanish, she maintained that she and Molina discussed and agreed on the terms of the lease purchase and prepared the Agreement and Addendum together in her office using forms she found on the internet. She further testified that Molina read and understood the documents before he signed them. According to Cage, Molina understood that she was in a hurry to sell the Linden Street house because she was behind on the mortgage payments, and he represented to her that he had all of the documentation he needed to get a loan and just needed time to get the money for the down payment and closing costs together. However, several months after the parties executed the Agreement and Addendum, she questioned Molina about the status of his financing, and he informed her that he was still working on gathering the

9

documentation required by his lender in order to secure funding to purchase the house.

According to Cage, the Buyers breached the Agreement and Addendum in a number of ways, including failing to "renew and keep up with [the] current termite [contract] that has been in place since sellers purchased [the] home," failing to make the monthly lease payments directly to her (rather than to Vanderbilt Mortgage), making unauthorized repairs to the house that increased the value of the house and made it less likely that Vanderbilt Mortgage would agree to a short sale, and failing to complete the purchase of the house by the November 4, 2018 deadline set forth in the Addendum. As a result of the Buyers' breach, Cage did not believe she was obligated to sell the property to them for $60,000.00 or to reimburse the Buyers' lease purchase fee or costs of unauthorized repairs made to the property.

In his deposition, Molina testified that he and Cage discussed and agreed on "a few of the terms and conditions" before he was presented with the Agreement and Addendum. Contrary to Cage's testimony that she and Molina prepared the Agreement and Addendum together in her office, Molina testified that he believed the documents were prepared by the notary. Molina testified that he did not read the Agreement and Addendum before signing them because he cannot really read English. He admitted that he and his wife had someone interpret the Agreement and Addendum for them; however, he stated that he "didn't really understand the contract."

Regarding his compliance with the terms and conditions of the Agreement and Addendum, Molina testified that he paid the $7,000.00 cash portion of the lease purchase fee to Cage prior to the execution of the Agreement and Addendum, that he pays for insurance on the house, and that he made the $1,000.00 monthly lease payments to Cage until he found out that the house was listed for sale and

Cage was not making the mortgage payments on the property. Molina testified that upon making these discoveries, he informed Cage that he was going to start making payments directly to the mortgage company. Molina admitted that Cage did not authorize him to begin paying the mortgage company directly, and he acknowledged that there was nothing in the Agreement or Addendum that stated that Cage would use a portion of the monthly lease payment to pay the mortgage or that authorized him to stop making the monthly lease payments to Cage for any reason. When asked about his compliance with the terms and conditions of the Agreement concerning securing financing for the purchase of the house, Molina testified that he "had financing, a lender, for the purchase of the house . . . [b]ut I didn't have the total amount for the purchase of the house." He further testified that he did not provide the Sellers with proof from a lender that a loan application had been made, and he admitted that he did not have an approved loan application from a lender. Molina confirmed that he did not pay the full purchase price to the Sellers by November 4, 2018.

At the conclusion of the bench trial, the trial court found that it was the intent of the parties to enter into a 24-month lease with an option for the Buyers to purchase the Linden Street house for $60,000.00, and for the $10,000.00 lease purchase fee to be a fee paid for being afforded twenty-four months to secure financing for the purchase, rather than a deposit to be applied towards the $60,000.00 purchase price. The trial court found that the Sellers did not commit fraud in the drafting and execution of the Agreement and Addendum. The trial court further found that Molina did everything within his power to complete the purchase of the property for the agreed-upon price of $60,000.00; however, due to the Sellers' decision to sell the house for less than the outstanding mortgage obligation, it would cost the Buyers an additional amount in order to obtain clear title to the property. In addition, the trial court found that the Buyers had been

11

required to make payments to satisfy the Sellers' obligations to Vanderbilt Mortgage in order to prevent a foreclosure. The trial court rendered judgment in favor of the Buyers, ordering the Sellers to pay the Buyers the amount of $21,953.52, consisting of: $16,782.82 (the difference between the $60,000.00 purchase price and the $76,782.82 mortgage balance at the time the Purchase Agreement was executed), plus $5,121.00 (the amount the Buyers paid in order to get the property out of foreclosure proceedings in the 19th JDC).[6] The trial court ordered the Sellers to execute any documents required to immediately transfer the property to the Buyers, to provide the Buyers' counsel with a ten-day payoff amount in writing from Vanderbilt Mortgage within seven days, and to pay the Buyers' counsel $2,221.33 for court costs and $5,000.00 for attorney fees.

The Sellers appealed, arguing that: (1) the trial court's finding that they breached the Agreement and Addendum by failing to transfer title to the Buyers was manifestly erroneous, since the evidence presented proved that the Buyers could not complete the purchase before the November 4, 2018 deadline; (2) the trial court's award of $16,782.82 to the buyers was manifestly erroneous; (3) the trial court's award of $5,121.00 for mortgage payments made by the Buyers without the Sellers' consent, plus an undetermined amount of attorney fees, was manifestly erroneous; and (4) the trial court erred in ordering the Sellers to immediately transfer the property to the Buyers, even though the Buyers could not and did not pay the purchase price.

## DISCUSSION

We will initially address a jurisdictional issue before addressing the merits of this appeal, as appellate courts have the duty to examine subject matter

---

[6] The judgment appears to contain a mathematical error, as the sum of these two amounts is $21,903.82. However, given our disposition of this matter on appeal, it is unnecessary to amend the judgment to correct this mathematical error.

jurisdiction *sua sponte*, even when the parties do not raise the issue. *El-Mumit v. Fogg*, 1988-0356, p. 7 (La.App. 1 Cir. 9/28/17), 232 So.3d 590, 594.

Cage filed a pro se motion for appeal on her own behalf and purportedly on behalf of Williams. However, the motion for appeal was signed only by Cage. Cage is not licensed to practice law in Louisiana; therefore, she cannot represent Williams in proper person and was not permitted by law to file a motion for appeal on Williams's behalf. See La. R.S. 37:212; *Louka*, 2023-0076 at pp. 4-5, 376 So.3d at 867. Accordingly, the motion for appeal filed and signed by Cage was without effect as to Williams. See *Louka*, 2023-0076 at pp. 4-5, 376 So.3d at 867. Williams did not file a motion for appeal on his own behalf, and although Cage and Williams later retained appellate counsel, no motion for appeal was ever filed on Williams's behalf by appellate counsel.

Perfecting an appeal of a judgment, pursuant to the requirements of La. C.C.P. art. 2121, requires (1) a petition or motion for appeal, (2) an order of appeal, and (3) a notice of appeal. *Louka*, 2023-0076 at p. 5, n.2, 376 So.3d at 867. Appellate courts do not acquire jurisdiction of an appeal that is not timely perfected. *Phillips v. Exxon Chemical Louisiana, LLC*, 2022-1290, p. 5 (La.App. 1 Cir. 6/23/23), 370 So.3d 738, 741. An appellant's failure to file an appeal timely is a jurisdictional defect, in that neither the court of appeal nor any other court has the jurisdictional power and authority to reverse, revise, or modify a final judgment after the time for filing an appeal has elapsed. *Louka*, 2023-0076 at p. 5, 376 So.3d at 867. Since Williams failed to timely perfect an appeal in accordance with the requirements of La. C.C.P. art. 2121, this court is without jurisdiction to consider the merits of an appeal by Williams. See *Louka*, 2023-0076 at p. 5, 376 So.3d at 867; see also La. C.C.P. arts. 2087 & 2123. Accordingly, Williams's appeal of the May 16, 2024 judgment must be dismissed, and this court will only address the merits of Cage's appeal.

In a breach of contract claim, the plaintiff bears the burden of proving that the defendant owed the plaintiff an obligation, the defendant failed to perform the obligation, and the defendant's failure resulted in damages to the plaintiff. *Huntsman International, L.L.C. v. Praxair, Inc.*, 2024-00627, p. 8 (La. 2/6/25), 400 So. 3d 882, 887, *reh'g denied*, 2024-00627 (La. 3/20/25), 403 So. 3d 598. In order to obtain specific performance of a contract to sell, the plaintiff must prove that the contract provides the right to demand specific performance and that he has fulfilled his obligations under the contract. La. C.C. art. 2623, *Boudreaux v. Vankerkhove*, 2007-2555, p. 9 (La.App. 1 Cir. 8/11/08), 993 So.2d 725, 732.

Our review of the trial court's factual findings in a breach of contract case is governed by the manifest error or clearly wrong standard, which provides that a court of appeal may not overturn a factual finding unless it is manifestly erroneous or clearly wrong. See *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). To affirm the trier of fact's factual findings, the supreme court has put forth a two-part test for the appellate review of facts: (1) the appellate court must find from the record that there is a reasonable factual basis for the finding of the trier of fact; and (2) the appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous). *Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987). Thus, if there is no reasonable factual basis in the record for the trier of fact's finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong. See *Stobart v. State, through Department of Transportation and Development*, 617 So.2d 880, 882 (La. 1993); *Moss v. State*, 07-1686, p. 3 (La.App. 1 Cir. 8/8/08), 993 So.2d 687, 693, *writ denied*, 2008-2166 (La. 11/14/08), 996 So.2d 1092. If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal

14

may not reverse those findings even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. *LAD Services of Louisiana, L.L.C. v. Superior Derrick Services, L.L.C.*, 2013-0163, pp. 17-18 (La. App. 1 Cir. 11/7/14), 167 So.3d 746, 760, *writ not considered*, 2015-0086 (La. 4/2/15), 162 So.3d 392.

Accordingly, this Court must review the record before us to determine whether there is a reasonable factual basis for the trial court's findings regarding the Sellers' breach, the Buyers' fulfillment of their obligations for purposes of demanding specific performance, and the Buyers' resulting damages. See *Mart*, 505 So.2d at 1127.

As previously noted, Cage was the only witness who testified at the trial of this matter. In addition, only four exhibits were admitted into evidence at the trial: Molina's deposition; the Agreement and Addendum; several photographs of the condition of the Linden Street house after the flood; and various documents and photographs related to the expenses incurred in the repair and remodeling of the Linden Street house by the Buyers.

At the beginning of the trial, counsel for the Buyers presented the trial court and opposing counsel with exhibit binders, which he described as including, among other things: the Agreement and Addendum; various documents and photographs related to the expenses of repairing and remodeling the Linden Street house; documents relating to the real estate listing for the Linden Street house; documents depicting the balance of the mortgage on the Linden Street house in November 2016 and November 2018; and documents evidencing a payment made by Molina to halt foreclosure proceedings initiated by Vanderbilt Mortgage. As counsel for the Buyers identified the exhibits contained in the binder, counsel for the Sellers raised an objection, and the trial court explained:

Right now, you're not offering introducing anything – he's not offering, introducing anything into evidence right now. He's just making his opening statement. . . .

\*\*\*

And so, right now . . . it's not being offered for purposes of being introduced into evidence, and so after the testimony, if you still want to lodge your objection I would ask that you reemerge [sic] your objection.

\*\*\*

It's noted overruled at this juncture being that it's not being sought to be introduced into evidence. If he so desires – if he makes the request to introduce it into evidence I would ask that you re-lodge it at that time.

During the trial, counsel for the Buyers made vague references to his intent to have several exhibits included in the binder admitted into evidence; however, none of those exhibits were ever actually offered, filed, and introduced into evidence by the Buyers' counsel or admitted into evidence by the trial court.[7]

During closing arguments, the Buyers' counsel made references to information apparently contained in several exhibits that were never admitted into evidence, such as the Sellers' mortgage balance on certain dates, the amount of a payment made by the Buyers in order to stop the foreclosure proceedings, and emails evidencing attempts by the Buyers to complete the act of sale prior to the November 4, 2018 deadline that were ignored by the Sellers.[8] During his closing argument, counsel for the Sellers objected to opposing counsel's reference to "unauthenticated[,] inadmissible exhibits" in his exhibit binder during his closing argument, which he would have challenged, "if they had tried to be introduced

---

[7] These exhibits apparently included documents related to the real estate listing for the Linden Street house, a schedule of payments received from the Buyers, and the foreclosure proceedings instituted by Vanderbilt Mortgage.

[8] Counsel for the Buyers has not asserted, either in the trial court or in brief to this court, that any of his exhibits were erroneously omitted from the record. Notably, in the appellees' brief, the only record citations for factual statements regarding mortgage payments made by Molina directly to Vanderbilt Mortgage, the foreclosure proceedings, Molina's payment to stop the foreclosure, and email correspondence evidencing the Buyers' attempts to complete the purchase of the property before the deadline are citations to the Buyers' motion for summary judgment and the attachments thereto. However, exhibits not properly and officially offered and admitted into evidence cannot be considered, even if they are physically filed into the trial court record. *Denoux v. Vessel Management Services, Inc.*, 2007-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88.

16

during this trial." The Sellers' counsel then made an oral motion to strike the evidence in the exhibit binder on the grounds that it contained inadmissible evidence. The trial court addressed this motion to strike in her ruling:

> Mr. Allen, I appreciate your oral motion to strike the exhibits that have been offered and introduced into evidence. Actually, no that's not what you stated. You move to strike the exhibit book that counsel for [Buyers] gave to the court for purposes of following through along with the exhibits that were offered and introduced into evidence. So I want to first address that. While although, there was an exhibit book presented to the court and that is very customary that attorneys do that. I get it for just about every trial. Not every exhibit that is listed in this book or that appears in this book was offered and introduced into evidence. The court only gave consideration and weight to the exhibits that were offered and introduced into evidence. Not the book in its entirety. The only thing that was used for purposes of reaching a decision or ruling in this case were those that were offered and introduced into evidence, and we actually look for that as buzzwords prior to accepting it into evidence. Yesterday prior to the conclusion of trial the last thing that I ended the day with was for those exhibits that have been offered and introduced into evidence, please supplement the record with the certified copies as it pertains to the joint stipulation number one, of the deposition that was taken of Mr. Molina, and there was . . . an exhibit by [the Buyers'] counsel that was listed as exhibit number two because you all stipulated to the purchase agreement.

> \*\*\*

> Those were the only things that were utilized that the court instructed you all to ensure that our minute clerk had copies of that for purposes of the record. So there I don't know what you're speaking of when you're saying that there are lots of inadmissible documents that the court has considered. The court has only considered what has been offered and introduced into evidence and at such time that the moving party sought to do it the other attorney was afforded the opportunity to object on the record as to whatever the objectionable grounds were and state their reasons for objecting subject to a ruling by the court and to . . . preserve your record. So I'll leave it there. So on the oral motion to strike the court is going to deny your oral motion to strike because for the exhibits that were offered and introduced into evidence there were a number that were joint exhibits and for the others at the time that they were offered and introduced that non-moving party had an opportunity to object to admissibility.

Despite her statement that she did not consider any evidence contained in the exhibit book that was not offered and introduced into evidence, in ruling on the merits, the trial court referenced several facts that were not contained in the

17

testimony or evidence presented at trial; i.e., the $16,782.82 difference between the $60,000.00 purchase price and the $76,782.82 mortgage balance in November of 2016 and the $5,171.00 payment made by Molina "for purposes of ensuring the property was not foreclosed upon." These facts were mentioned in the Buyers' counsel's closing argument and were apparently supported by documents included in the exhibit book that were never admitted into evidence.

Appellate courts are courts of record and may not review evidence that is not in the appellate record, or receive new evidence. La. C.C.P. art. 2164; *Denoux*, 07-2143 at p. 6, 983 So.2d at 88. Appellate courts may not consider documents not properly admitted into evidence, whether the lack of admission into evidence was assigned as error or not. *Wood Materials, LLC v. City of Harahan*, 2017-142, p. 2 (La.App. 5 Cir. 10/2/17), 228 So.3d 293, 295, *citing Quinn v. Louisiana Citizens Property Insurance Corporation*, 2012-152, p. 9, n.5 (La. 11/2/12), 118 So.3d 1011, 1017, n.5. Further, argument by counsel does not constitute evidence. *Davis v. Naquin*, 2023-0057, p. 5, n.3 (La. App. 1 Cir. 9/15/23), 375 So.3d 968, 972, n.3.

After a thorough review of the record before us on appeal, considering only properly admitted evidence, we find that there is no reasonable factual basis for the trial court's conclusions that the Sellers breached the Agreement and Addendum, that the Buyers were entitled to specific performance, and that the Buyers suffered damages in the amount of $21,953.52. There was simply no testimony or evidence presented at the trial of this matter that the Buyers obtained all of the funding needed to close on the sale of the home prior to the deadline and that the Sellers refused to sell the property to them. Furthermore, there was testimony from both Cage and Molina that Molina failed to comply with the provision of the Addendum requiring him to make a $1,000.00 monthly lease payment to Cage. Finally, the only evidence regarding the balance of the mortgage in November 2016 was Cage's testimony that she thinks that the balance was $72,000.00 when she called

Vanderbilt Mortgage in October 2016 to inquire about a short sale, and there was no testimony or evidence whatsoever regarding Molina's payment to stop the foreclosure proceedings. Despite the trial court's statement that she considered only those exhibits that had been properly admitted into evidence in ruling on the matter, her findings concerning the mortgage balance in November 2016 and the amount of the payment made by Molina to stop the foreclosure proceedings could only have been based on improper consideration of arguments of counsel or exhibits that were not properly admitted into evidence.

Since we have found that the trial court's factual findings that the Sellers breached the contract, that the Buyers were entitled to specific performance, and that the Buyers incurred damages in the amount of $21,953.52 were manifestly erroneous, the Buyers are not entitled to an award of attorney fees under the terms of the Agreement. Accordingly, the trial court's judgment against Cage must be reversed.

## CONCLUSION

For the reasons set forth herein, the appeal of defendant, Willie Williams, Jr., is dismissed, and the May 16, 2024 judgment of the trial court in favor of plaintiffs, Felipe Armendariz Molina and Ausy Oseguera, and against defendant, Kimberly Cage, is reversed. Judgment is rendered in favor of defendant, Kimberly Cage, dismissing the plaintiffs' claims against her with prejudice. Each party shall bear their own appeal costs.

**APPEAL DISMISSED IN PART; REVERSED AND RENDERED.**